BOBBY MINNIS,                    :

        Plaintiff,               :

vs.                             :        REPORT OF MAGISTRATE JUDGE

A.KEATON, et al.,               :

        Defendant(s).
_____/

## Introduction

The plaintiff Bobby Minnis, currently housed at the Reception and Medical Center in Lake Butler, Florida, has filed an amended pro se civil rights complaint pursuant to 42 U.S.C. §1983 (DE#20). This cause is presently before the Court for initial screening pursuant to 28 U.S.C. §1915, because the plaintiff is proceeding *in forma pauperis,* and seeks redress from a government entity, or from an officer or employee of a governmental entity. Plaintiff also has pending a Motion for Declaratory Judgment (DE#13).

As the record reflects, the Court screened Plaintiff's initial complaint and, in keeping with the rule that a pro se litigant's claims should not be dismissed pursuant to the PLRA without first giving the Plaintiff an opportunity to amend if it appears he might be able to state a claim, advised Plaintiff of the deficiencies with this complaint to allow him an opportunity to cure them. (DE#10). Thereafter Plaintiff filed documents that, though unclear, seemed to indicate that Plaintiff had received yet been deprived of the Court's detailed order. (See DE#18). The Court therefore directed the Clerk of the Court to send Plaintiff another copy of the Court's Order to Amend via certified mail with receipt

---

[1]Related action: 17-Civ-80170-Marra.

requested, and extended the deadline for Plaintiff to file his amended until April 24, 2017. (DE#19). However, the very next day the Court received the instant amended complaint (DE#20), dated March 24, 2017, which had apparently crossed in the mail with the copy of the Court's order extending the deadline for filing his amended complaint. The Court thus waited for the April 24, 2017 deadline to pass, in the event that Plaintiff filed another amended complaint with the benefit of the Court's previously-issued order to amend. However, that date has come and gone, and the motion to compel (DE#23) that Plaintiff has filed seems to indicate that Plaintiff did in fact get the order. The Court thus presumes that Plaintiff intends to rely on the amended complaint he filed on March 24, and proceeds to screen that complaint.

## Claims

Plaintiff sues A.Keaton, an appeals officer with the Bureau of Grievance Appeals in Tallahassee, Florida, Captain Lewis of the South Florida Reception Center, and nine (9) John Doe male officers who were working the "Charley" shift late on the night of Saturday, August 27, 2016 through the early morning hours of Sunday, August 28, 2016 at the South Florida Reception Center. Plaintiff sues all defendants in their individual capacities only.

Plaintiff alleges that just after midnight on Saturday night and Sunday morning, one of the John Doe officers took Plaintiff out of his cell under the pretense of taking him to medical, but that this officer instead took Plaintiff to "confinement," where he repeatedly demanded that Plaintiff drop a § 1983 lawsuit that Plaintiff apparently has pending against other FDOC officers in the Northern District of Florida. Plaintiff allegedly refused, which allegedly angered this officer.

Plaintiff alleges that then, about 3 a.m., this officer took Plaintiff to an area where there are no cameras, where the rest of the John Doe officers (with the exception of one John Doe officer who was in the "control bubble") surrounded him and again demanded

that Plaintiff drop his lawsuit.  Plaintiff alleges that these
officers then proceeded to brutally beat and torture Plaintiff in
an allegedly horrific manner, that for the sake of the reader is
not be detailed here.  Plaintiff further alleges that these
officers then poured caustic liquids into Plaintiff's eyes, nose,
mouth, and into the cuts that has resulted from their attack.
Plaintiff alleges that all these officers threatened that if
Plaintiff ever sued them they would be back for more.  In addition,
Plaintiff alleges that the officer in the control bubble watched
the entire attack, laughing all the while, and never attempted to
intervene.  Plaintiff further alleges that these officers stated
that the FDOC would cover everything up, and that inmates who
reported repeat sexual assaults are classified by the SFRC's
psychiatric team as pedophiles or sexual predators in retaliation
for talking, so that Plaintiff should not "waste his time."

According to Plaintiff, the offending officers then put him
back in his cell, refusing Plaintiff's pleas for medical attention
for the injuries he had sustained during the attack.  Plaintiff
further alleges that the officer in the control bubble had to open
the door to confinement so that the other officers could lead
Plaintiff to his cell.  Plaintiff alleges that, then, about an hour
later, one of the defendants put a tray through the food flap in
Plaintiff's cell door, allegedly "for the sake of the camera."

Plaintiff alleges that, a few hours later, Captain Lewis began
to walk confinement with two officers, and that when she glanced in
Plaintiff's cell and saw Plaintiff unconscious crumpled on the
floor covered in blood she "freaked" and had him rushed to medical
in a wheelchair, declaring that Plaintiff needed emergency
assistance.  However, Plaintiff alleges that when Captain Lewis
learned that officers had assaulted him, she put Plaintiff back in
his cell, refusing to hear Plaintiff's pleas for protection.

Plaintiff alleges that, the next morning on August 29, he was
transported to South Bay Correctional Institution, where he
reported the incident to the Inspector General, who started an

investigation and confirmed with x-rays that Plaintiff did indeed have two broken ribs. According to Plaintiff, the IG's investigation uncovered the totality of what had happened, and the IG's office took the unprecedented action of barring all SFRC officers from having contact with Plaintiff. However, Plaintiff alleges that, because no protective order could be given, South Bay's Assistant Warden informed Plaintiff that the SFRC officers did not appreciate him reporting them to the Inspector General, and were asking that Plaintiff be sent back to the SFRC. Plaintiff alleges that, therefore, he began to immediately appeal to every authority he could to protect him, and that his appeal to the Secretary of the FDOC was responded to by Appeals Officer A.Keaton, who automatically denied his request with some cut-and-paste rubber stamp response. However, according to Plaintiff, Officer Keaton had several means available at the Central Office as an assistant to the Secretary over the FDOC to see to it that no harm came to Plaintiff. Plaintiff further alleges that, as a result of Officer Keaton's actions, Plaintiff was sent back to SFRC using a false accusation that made the retaliatory transfer seem innocuous and, while there, the same officers brutally assaulted and tortured him in the same way for three weeks, all the while demanding that Plaintiff drop his lawsuit. Finally, Plaintiff alleges that the Inspector General eventually took the extraordinary step of granting a protection order and that Plaintiff was transferred to another part of the state, but that Officer Keaton could have accomplished this before the Plaintiff was subjected to another three weeks of brutal assaults and torture at the hands of the SFRC officers.

Based on these allegations, Plaintiff seeks compensatory and punitive damages. Plaintiff alleges that he has sustained severe and extreme physical injuries, mental and emotional suffering, and that he will need corrective surgeries to be made whole again. Plaintiff also demands a jury trial.

<u>Standard of Review</u>

As amended, 28 U.S.C. §1915 of the Prison Litigation Reform Act, which permits *in forma pauperis* proceedings, reads in pertinent part:

(e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –

\*   \*   \*

(B) the action or appeal –

\*   \*   \*

(i)  is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. §1915(e)(2).

Section 1915A of the PLRA further provides:

(a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. §1915A(a), (b).

A complaint is frivolous under the PLRA "where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490

U.S. 319, 325 (1989); <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1044 (2001). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1979)(<u>quoting</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. <u>Davis v. Monroe County Bd. Of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the plaintiff does not plead facts that do not state a claim to relief that is plausible on its face. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007)(retiring the oft-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim); <u>Watts v. FIU</u>, 495 F.3d 1289 (11th Cir. 2007). While a complaint attacked for failure to state a claim upon which relief can be granted does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S.Ct. at 1964-65.

Discussion

*Retaliation*

To state a First Amendment claim for retaliation, the inmate must allege that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action ... and the protected speech...." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir.2008). "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." <u>Moton v. Cowart</u>, 631 F .3d 1337, 1341 (11th Cir.2011) (*citing* <u>Mosley</u> at 1278).

With regard to whether his speech was constitutionally protected, Plaintiff alleges that he filed a suit raising claims under § 1983 against other DOC officers. These allegations are sufficient to satisfy the element that Plaintiff's speech was constitutionally protected. <u>See</u> <u>Redd v. Conway</u>, 160 F. App'x 858, 862 (11th Cir.2005) ("The First Amendment protects inmates from retaliation by prison officials for filing lawsuits or administrative grievances.") With regard to whether Plaintiff suffered adverse action such that the allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech, the Court nned not detail here the grotesque and horrific nature of Plaintiff's allegations. Suffice it to say that, as set forth above, Plaintiff alleges that he was taken outside in the middle of the night and intentionally and brutally assaulted and tortured by the John Doe officers in retaliation for

7

filing a § 1983 suit, and later in retaliation for reporting their initial assaults to the Inspector General. These allegations are sufficient at to satisfy the element Plaintiff suffered adverse action, such that a person of ordinary firmness would likely be deterred from engaging in the protected speech.

Finally, with regard to regard to whether there is a causal relationship between the retaliatory action and the protected speech, Plaintiff also alleges that the officers specifically told him to drop his lawsuit, and that the Assistant Warden at South Bay told Plaintiff that the SFRC officers were not happy with his report to the Inspector General, and wanted Plaintiff back. Moreover, Plaintiff alleges that, once he was back at the SFRC, these same John Doe officers once again demanded that he drop his original 1983 suit, and told Plaintiff. These express allegations must be taken as true at this stage in the proceedings. See Boxer v. Harris, 437 F.3d 1107, 1112 (11th Cir.2006)(express allegation that plaintiff was punished for filing grievances sufficient to state a retaliation claim on §1915A screening).

Based on the foregoing, the Court easily concludes that Plaintiff has stated a claim for retaliation against the John Doe officer who actually allegedly assaulted him. The question remains, however, whether Plaintiff has stated retaliation claim against the John Doe Officer in the control bubble.

"If [an] officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under section 1983." Ensley v. Soper, 142 F.3d, 1402, 1407 (11th Cir.1998)(quotations and citation omitted). In order to be liable for failing to intervene when other officers are committing constitutional violations, an officer must be in a position to intervene. Id.

Here, Plaintiff alleges that the John Doe officer in the control bubble remained in there the watching the entire attack, laughing, and was the one opened the electrical doors to allow the

other John Doe officers to drag the Plaintiff back to his cell afterward. These allegations are sufficient to state a claim for failure to intervene in the retaliatory constitutional violation. See Detris v. Coats, 523 F. App'x 612, 616-17 (11th Cir. 2013)(allegations that deputies stood by and watched while other deputies beat pretrial detainee even after he was pinned on the floor were sufficient to state § 1983 claim for failing to intervene); see also Heflin v. Miami-Dade Cty., 393 F. App'x 658, 660 (11th Cir. 2010)(allegations that defendants witnessed unlawful acts and had the opportunity to intervene but failed to do so sufficient to state a claim under § 1983).

*Cruel and Unusual Punishment*

The Eleventh Circuit, joining other circuits, has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment. Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir.2006); see also Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir.1999) (same); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir.1997); Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir.1997). "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." Boddie, 105 F.3d at 861 (citation and quotation omitted). However, the alleged condition must be objectively serious enough to amount to a constitutional deprivation. See Bell v. Wolfish, 441 U.S. 520, 539 n.21, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979)("There is, of course, a de minimis level of imposition with which the Constitution is not concerned.")

Here, Plaintiff alleges that the SFRC John Doe officers who attacked and brutalized Plaintiff sodomized him with a broomstick, tied a rope around his genitals and attempted to pull them off his body, and then forced Plaintiff to perform oral sex on them. Plaintiff further alleges, as set forth above, that the officer in the control bubble remained there watching the entire attack,

laughing, and was the one who let the other officers drag Plaintiff to his cell afterward. The court has little difficulty in concluding that these allegations are more than sufficient to state a claim for and Eighth Amendment violation against the officers who assaulted him directly, and against the officer in the control bubble on a theory of failure to intervene, based upon the standards for such claims set forth in the discussion of Plaintiff's retaliation claim, above.

*Deliberate Indifference to Serious Medical Needs*

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173(1976)); see also Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted). An Eighth Amendment claim contains both an objective and a subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). First, a plaintiff must set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farmer, 511 U.S. at 834; McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363. The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. Id. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106. The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06; Wilson, 501 U.S. at 298.

The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. See, e.g., Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Allegations that raise only claims of mere negligence, neglect, or medical malpractice are insufficient to recover on a §1983 claim. Estelle v. Gamble, supra. In fact, once an inmate has received medical care, courts are hesitant to find that an Eighth Amendment violation has occurred. Hamm, supra. Treatment

11

violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986).

Here, Plaintiff alleges that the brutal attack resulted in broken ribs, contusions all over his body, internal hemorrhaging causing profuse bleeding, and severe injury to Plaintiff's reproductive organs. These are the types of injuries that are so serious that even a layperson would easily recognize the necessity for a doctor's attention. As such, Plaintiff has alleged the objective component of a claim of deliberate indifference to serious medical needs; i.e., that he had a serious medical need. <u>See</u> <u>Hill</u>, 40 F.3d at 1187 (serious medical need is considered "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

With regard to the officers, Plaintiff alleges that the officers who assaulted him denied him medical treatment and instead threw him into his cell. He further alleges, as set forth above, that the officer in the control bubble was the one who let the other officers drag Plaintiff into his cell. As such, Plaintiff has also alleged the subjective component of a claim of deliberate indifference to serious medical needs against all the John Doe officers; i.e., that the denial of medical care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Rogers</u>, 792 F.2d at 1058.

With regard to Captain Lewis, Plaintiff alleges that, a few hours later, Captain Lewis began to walk confinement with two officers, and that when she glanced in Plaintiff's cell and saw Plaintiff unconscious crumpled on the floor covered in blood she "freaked" and had him rushed to medical in a wheelchair, declaring

that Plaintiff needed emergency assistance. However, Plaintiff alleges that when Captain learned that officers had assaulted him, she put Plaintiff back in his cell, refusing to hear Plaintiff's pleas for protection. These allegations are sufficient to state a claim of deliberate indifference to serious medical needs against Captain Lewis. See Hill, 40 F.3d at 1187 (a serious medical need is considered "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"); Farmer, 511 U.S. at 834 (the subjective component of a deliberate indifference claim requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs)

*Claim Against A.Keaton*

Under the Eighth Amendment, a prison official may not inflict cruel and unusual punishment, which includes a prison official's duty to protect an inmate from violence. See Purcell v. Toombs County, 400 F.3d 1313, 1319 (11th Cir.2005). Failure-to-protect precedent often focuses on a threat posted to an inmate by other inmates. However, the requirement to protect an inmate from a known danger applies equally in the context of a threat posed by a fellow officer. See, e.g., Forester v. Hodges, No. 4:12-CV-04094-VEH, 2014 WL 3974679, at *9 (N.D.Ala. Aug.7, 2014) ("[T]he duty of an officer to protect inmates in their care from assault by fellow officers had been clearly established for years." (*citing* Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560 (11th Cir.1993))); Warren v. Vincent, No. CIV.A. 08-250, 2012 WL 566650, at *3 (W.D.Pa. Feb.21, 2012) (holding that inmate stated Eighth Amendment failure to protect claim against prison officials who, in the face of inmate's repeated complaints of violence by prison guards, allegedly took no action to address his safety concerns).

Although prison officials have a duty to protect prisoners from violence, not every instance of violence "translates into constitutional liability for prison officials responsible for the

victim's safety." <u>Farmer</u>, 511 U.S. at 833–834 (quotations and citations omitted). It is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." <u>Id.</u> at 828.   To state a cognizable failure-to-protect claim under the Eighth Amendment, the prisoner must establish: (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.  <u>Goodman v. Kimbrough</u>, 718 F.3d 1325, 1331 (11th Cir.2013).  "Merely negligent failure to protect an inmate from attack does not justify liability under Section 1983." <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir.1990).

When examining the first element–a substantial risk of serious harm–courts use an objective standard.  <u>See</u> <u>Marsh v. Butler Cnty., Ala.</u>, 268 F.3d 1014, 1028–29 (11th Cir.2001) (<i>en banc</i>), abrogated on other grounds by <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  The second element–the defendant's deliberate indifference to that risk–has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must state allegations that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 617 (11th Cir. 2007) (citing Farmer, 511 U.S. at 829, 837, 844) (footnote omitted).  To satisfy the objective component, a plaintiff must show that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." <u>Id.</u>

Here, taking Plaintiff's allegations as true, which the Court must of course do at this juncture, Plaintiff alleges that Officer Keaton knew by virtue of Plaintiff's administrative appeal that Plaintiff had been brutally assaulted by prison guards at the SFRC who were asking that he be sent back there for more, that Officer Keaton has the means to protect Plaintiff from these officers by virtue of his position, but that Officer Keaton instead denied Plaintiff's request for protection with a rubber stamp.

There can be little doubt that these allegations satisfy the first element of a failure-to-protect claim; that is, that Plaintiff was at a substantial risk of serious harm. With regard to the second element, whether Officer Keaton subjectively knew that Plaintiff was at such risk, Plaintiff's allegation that his administrative appeal put Officer Keaton on notice is sufficient to satisfy this element. And finally, with regard to the final element of failing to respond in an objectively reasonable manner, Plaintiff alleges that Officer Keaton had the means to protect Plaintiff from further attacks, yet failed to do so. As such, Plaintiff's allegations state a claim for failure-to-protect against Officer Keaton. See Goodman, 718 F.3d at 1331 (to state a cognizable failure-to-protect claim, the Plaintiff must allege facts establishing a substantial risk of serious harm, the prison officials' deliberate indifference to that risk, and causation).

*Fictitious Party Practice*

Although plaintiffs are permitted to use fictitious names in their complaints, see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 391, 91 S. Ct. 1999, 2002, 29 L. Ed. 2d 619 (1971), fictitious-party pleading is not generally permitted in federal court. See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010)(citation omitted). However, the Eleventh Circuit has created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be "at the worst, surplusage." Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992). What this means as a practical matter is that a plaintiff may proceed against an unnamed or fictitious defendant only when the it is clear that discovery will uncover the defendant's identity, or when the plaintiff's description of the individual is sufficiently clear to allow service of process on that defendant. Dean, 951 F.2d at 1215-10; see also Bowens v. Superintendent of Miami S. Beach Police Dep't, 557 F. App'x 857, 862 (11th Cir. 2014). So, for example, naming a defendant such as

"Chief Deputy of the Jefferson County Jail," "Governor of Alabama," or even "Arresting Officers" are permissible because either the real party's name will be uncovered through discovery, or the description is sufficiently specific to allow for service of process. See Dean, 951 F.2d at 1216 and n.6; Bowens, 557 F. App'x 862. Conversely, failing to describe unnamed defendants, or merely giving general descriptions without making any timely discovery requests to attempt to ascertain their identities, will properly result in the dismissal of those defendants. See Richardson, 598 F.3d at 738; Moulds v. Bullard, 345 F. App'x 387, 390 (11th Cir. 2009).

When a court grants a litigant leave to proceed IFP, the officers of the court must "issue and serve all process." 28 U.S.C. § 1915(d). The prisoner must, however, provide sufficient information to identify the defendant. See Richardson, 598 F.3d at 739-40; see also Fowler v. Jones, 899 F.2d 1088, 1095 (11th Cir. 1990) (citing with approval district court's dismissal for failure to prosecute because of "inaction and dilatoriness" on the part of a prisoner-litigant).

Here, the Court's Order to Amend advised Plaintiff of the need to provide not only reasonably specific titles for all John Doe defendants, but also of the need in this case for Plaintiff to be certain of the date of the alleged beatings in August in order to identify the correct officers, and also of the need for whatever physical description Plaintiff could provide to assist in identifying these defendants. This Plaintiff has done in his amended complaint and, therefore, his complaint should be allowed to proceed with fictitious names at this point, since it seems reasonably certain that the pertinent FDOC officials should be able to identify the officers at issue.

A federal district court is empowered to issue a declaratory judgment by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1982).  Section 2201 provides, in pertinent part:

> § 2201. Creation of remedy
>
> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.  That statute, echoing the "case or controversy" requirement of Article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an "actual controversy."  That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests.  Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir.1985) (*citing* Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Sullivan v. Div. of Elections, 718 F.2d 363, 365 (11th Cir.1983)).  The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Id. (citation omitted).  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate and create a definite, rather than speculative, threat of future injury.  Id. (*citing* City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Golden, 394 U.S. at 108; Wolfer v. Thaler, 525 F.2d 977, 979 (5th Cir.1976)).  The remote possibility that a future injury may happen is not sufficient to

satisfy the "actual controversy" requirement for declaratory judgments. Id. (citing Lyons, 461 U.S. at 103).

Here, Plaintiff's motion, which as filed early in this case, generally alleges that he is being transferred around within the FDOC in retaliation for filing lawsuits, and that he was then housed at Holmes CI, alleged to be one of the FDOC's worst facilities, where he was being repeatedly assaulted by other inmates. However, as set forth above, Plaintiff alleges in his amended complaint that the Inspector General finally took the extraordinary measure of issuing an order of protection. Moreover, as Plaintiff's most recent Notice of Change of Address reflects (and as reference to the FDOC website confirms), Plaintiff has been transferred from Holmes CI, and is currently housed at the FDOC's Reception and Medical Center in Lake Butler, Florida. Thus, a declaration that some past conduct violated Plaintiff's constitutional rights "would [be] nothing more than a gratuitous comment without any force or effect." N. Va. Women's Med. Ctr. v. Balch, 617 F.2d 1045, 1049 (4th Cir.1980).

Accordingly, Plaintiff's claim for declaratory judgment relief against is subject to dismissal for failing to satisfy the "actual controversy" prerequisite of 28 U.S.C. § 2201. See Tucker v. Phyfer, 819 F.2d 1030, 1035 & n.5 (11th Cir.1987) (district court was required to dismiss plaintiff's claim for declaratory and injunctive relief for lack of standing, plaintiff's "live" claim for money damages notwithstanding, because a declaration that the defendants' past conduct violated his constitutional rights "would be nothing more than a gratuitous comment without any force or effect") (citing Emory, 756 F.2d at 1552); see also, e.g., Gordon v. Colin, 267 Fed.Appx. 843, 845 (11th Cir.2008) (unpublished) (affirming district court's dismissal of civil rights plaintiff's claim for prospective declaratory relief against judge, because the possibility that the judge would issue a future writ of bodily attachment was too speculative to satisfy the case and controversy requirements of Article III); Holt v. Crist, 233 Fed.Appx. 900,

903-04 (11th Cir.2007) (unpublished) (civil rights plaintiff's claims against judge, prosecutors, and public defender arising from state criminal prosecution brought against him did not warrant declaratory relief, notwithstanding his claim that he would possibly be subject to criminal prosecution in the future; all of plaintiff's factual allegations related to past conduct, and he made no allegation of a continuing injury) (*citing* Emory, 756 F.2d at 1552; Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1348 (11th Cir.1999); Siegel v. LePore, 234 F.3d 1163, 1176-77 (11th Cir.2000)).

Moreover, to the extent that Plaintiff's motion for declaratory judgment might be construed as a motion for a preliminary injunction to have him transferred out of Holmes CI, it is well-settled that "an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir.1985); see also Booth v. Churner, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that a plaintiff's transfer to another prison mooted his claims for injunctive relief); Boxer X v. Donald, 169 Fed. Appx. 555, 559 (11th Cir. 2006) ("Because Boxer is no longer housed at the prison in which defendants Flynn and Terry are currently employed, [claims for] injunctions against [Flynn and Terry] are now moot."); Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir.1988), cert. denied, 488 U.S. 1046 (1989) ("[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred.") (*quoting* Wahl, 773 F.2d at 1173, cert. denied, 488 U.S. 1046 (1989).

## Conclusion

Based on the foregoing, it is hereby recommended that:

1. Plaintiff's claim against the John Doe officers who allegedly assaulted him in August of 2016 and upon his return to the SFRC proceed against these officers in their individual capacities on First Amendment theories

of retaliation and Eighth Amendment theories of cruel and
unusual punishment;

2.   Plaintiff's claim against the John Doe officer in the
     control bubble during the alleged August 2016 attack
     proceed against this officer in his individual capacity
     on a theory of failure to intervene in the constitutional
     violations committed by the other John Doe officers, as
     set forth in paragraph 1, above;

3.   Plaintiff's claim against Captain Lewis proceed against
     her in her individual capacity on Eighth Amendment
     theories of deliberate indifference to serious medical
     needs;

4.   Plaintiff's claim against Officer Keaton proceed against
     him or her in his or her individual capacity on Eight
     Amendment theories of failure-to-protect; and

5.   Plaintiff's Motion for Declaratory Judgment (DE#13) be
     DENIED AS MOOT.

Objections to this report may be filed with the District Judge
within fourteen days of receipt of a copy of the report. Failure
to file timely objections shall bar plaintiff from a *de novo*
determination by the district judge of an issue covered in this
report and shall bar the parties from attacking on appeal factual
findings accepted or adopted by the district judge except upon
grounds of plain error or manifest injustice. See 28 U.S.C.
§636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v.
Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745
(11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144,
1149 (11th Cir. 1993).


It is so recommended at Miami, Florida, this 8th day of May,
2017.

_____
UNITED STATES MAGISTRATE JUDGE

Copy furnished:

Bobby Minnis
B05683
Reception and Medical Center-West Unit (Lake Butler)
Inmate Mail/Parcels
Post Office Box 628
Lake Butler, FL 32054