```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 17-CIV-20575-GAYLES
                              MAGISTRATE JUDGE P.A. WHITE
```

BOBBY MINNIS,                      :

      Plaintiff,             :           REPORT
                                        OF MAGISTRATE JUDGE
v.                                 :              (DE#52)

Julie Jones, et al.                :

      Defendants.            :
_____

## Introduction

The plaintiff Bobby Minnis has filed a pro se civil rights action raising claims under 42 U.S.C. §1983. This cause is presently before the Court upon Defendant Keaton's Motion to Dismiss for Failure to Exhaust Administrative Remedies (DE#52). The Court has considered the motion (DE#52), and Plaintiff's Brief in Opposition thereto (DE#62), as well as Plaintiff's Statement of Disputed Factual Issues (DE#63), and Plaintiff's Declaration in Opposition (DE#64).[1]

## General Allegations

Plaintiff alleges that, on August 28, 2016, he was removed from his confinement cell at South Florida Reception Center ("SFRC"), taken to an area of the confinement dorm not captured by cameras, and brutally beaten and sexually abused by eight corrections officers. [DE#20, pgs. 5-6]. Plaintiff alleges that he was transferred from SFRC to South Bay Correctional Facility ("South Bay") the next day. [Id. at 8, ¶8]. Plaintiff further

---

[1] More than one month has passed since Plaintiff filed his responsive documents, and Defendant Keaton has not filed any reply.

alleges that, while at South Bay he sent a "request for protection" to the Secretary of the Florida Department of Corrections ("FDC"), but he was nevertheless returned to SFRC, where he was repeatedly "tortured and brutally assaulted" by the same officers who had abused him on August 28. [Id. at 7-8, ¶¶9-11]. As for Defendant Keaton–whom Plaintiff identifies as an "Appeals Officer" for FDC and "assistant to the Secretary [of FDC],"–Plaintiff alleges that she exhibited "callous disregard and deliberate indifference" to the threat of serious harm to Plaintiff that would befall him if he were returned to SFRC. [Id. at 7, ¶9]. Plaintiff alleges that Defendant Keaton had "several means at [her] disposal" to ensure Plaintiff's safety, but she nevertheless "automatically denied" Plaintiff's request for protection. [Id. at 7-8, ¶¶9-10]. As a result, Plaintiff alleges, he was sent back to SFRC, and "back into the hands of those who brutally assaulted him." [Id. at 7-8, ¶¶9, 11].

## Standard of Review

The PLRA requires an inmate to exhaust administrative remedies before filing a civil rights action. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). The requirement is mandatory and there is no discretion to waive it. Porter, 534 U.S. at 524. The PLRA requires proper exhaustion, which means a prisoner must comply with the procedural rules and deadlines of the institution's grievance system. Woodford v. Ngo, 548 U.S. 81 (2006).

The current exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Porter, 534 U.S.

2

at 516-17. In other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. Id. at 517.

There are no futility or inadequacy exceptions to the PLRA's mandatory exhaustion requirement. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). A prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Id. at 1325-26. For instance, an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. Id. Further, prisoners must have sought to file out-of-time grievances and/or grievance appeals in order to exhaust their administrative remedies under the PLRA. A prisoner who has not sought leave to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999). Even if an appeal would have been futile, the requirement that it be filed is not waived. See Alexander, 159 F.3d at 1325-26.

The Eleventh Circuit has held that exhaustion of administrative remedies is a matter in abatement and not an adjudication on the merits and, therefore, an exhaustion defense is not properly raised in a summary judgment, but it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant v. Rich, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1998) (internal quotation marks omitted)). The court further explained that even though motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b), federal courts have traditionally "entertained certain pre-answer motions that are not expressly

provided for by the rules." Id. (quoting Ritza, 837 F.2d at 369) (internal quotation marks omitted). The court went on to state that exhaustion of administrative remedies is a matter of judicial administration, and held that exhaustion should be decided on a Rule 12(b) motion to dismiss. Id. (citing Johnson v. Meadows, 418 F.3d 1152, 1153-54 (11th Cir. 2005). Where exhaustion is treated as a matter in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." Id. (citing Ritza, 837 F.2d at 369).

> The Eleventh Circuit has explained that:
>
> [w]hen deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendant's versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion." Id. (citing Bryant, 530 F.3d at 1373-74, 1376).

Myles v. Miami-Dade County Corr. & Rehab. Dept., 476 Fed.Appx. 364, 366 (11th Cir. 2012).

### Applicable Procedures

In the context of suits regarding conditions of prison life within the FDC, in order to exhaust his administrative remedies, Plaintiff must follow the administrative procedures set forth in Chapter 33 of the Florida Administrative Code. Chapter 33 provides a system for prisoners to submit grievances and appeal grievance rulings with which they are dissatisfied. Fla. Admin. Code. §33-103.001. Thus, "[a] Florida inmate's administrative remedies

are not exhausted until his grievance has finally been appealed to, and denied by, the Secretary of the Florida Department of Corrections." Lyons v. Trinity Services Group, Inc., 401 F.Supp.2d 1290, 1295 (S.D. Fla. 2005).

The first step in the grievance procedure is for the inmate to submit an informal grievance at the institutional level, using form DC6-236. Fla. Admin. Code. §33-103.002(12), and §33-103.005(1). An inmate may file an informal grievance regarding almost any category of complaint. Fla. Admin. Code. §33-103.005(1). An inmate may not skip this first step unless his grievance falls into certain categories of grievances. Id. ("Inmates shall utilize the informal grievance process prior to initiating a formal grievance."). With regard to those categories, including grievances of an emergency nature,[2] grievances alleging violations of the Americans with Disabilities Act, grievances alleging sexual abuse, and medical grievances, the inmate is permitted, but not required, to skip the filing of an informal grievance and file a formal grievance with the warden's office, using form DC1-303. Fla. Admin. Code. §33-103.002(5), §33-103.005(1), and §33-103.006(3).

An inmate may also present certain limited categories of grievances directly to the Secretary of the FDC ("Secretary"). The categories of grievances that may be presented directly to the Secretary are "[e]mergency grievances and grievances of reprisals, protective management, admissible reading material, grievances concerning sentence structure (release date calculations), inmate banking issues or sexual abuse grievances when the abuse is alleged to have been committed by the Warden of the institution where the inmate is currently housed..." Fla. Admin. Code. §33-103.002(7), and §33-103.007(6)(a). Direct grievances to the Secretary are filed

---

[2] An "emergency grievance" is a grievance regarding "matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code. §33-103.002(4).

5

using form DC1-303. Fla. Admin. Code. §33-103.002(7), and §33-103.007(1). Grievances sent to the Secretary are processed by the FDC Bureau of Inmate Grievance Appeals ("Bureau").

In order to be timely, an informal grievance must be received by the designated prison official within twenty calendar days of the incident date. Fla. Admin. Code. §33-103.011(1)(a). A formal grievance must be received by the designated prison official within fifteen calendar days of the incident date. Fla. Admin. Code. §33-103.011(1)(b). A direct grievance must be received by the Secretary within fifteen calendar days of the incident. Fla. Admin. Code. §33-103.011(1)(d).

Should the inmate's institutional level grievance (informal or formal) be denied, he must then participate in the grievance appeals process in order to properly exhaust his claims. Lyons, 401 F.Supp.2d at 1295.

To appeal the institution's denial of an informal grievance, the inmate must, within fifteen calendar days of receiving the denial, file a formal grievance at the institutional level and attach the contested informal grievance. Fla. Admin. Code. §33-103.006(1)(a) & (g), and §33-103.011(1)(b)(1).

To appeal the institution's denial of a formal grievance (whether the formal grievance was filed as the initial grievance or as the appeal of an informal grievance), the inmate must, within fifteen calendar days of receiving the denial, file a grievance appeal to the Secretary and attach the contested grievances. Fla. Admin. Code. §33-103.007(1) & (5), and §33-103.011©.

Appeals that are submitted late or are otherwise in noncompliance with Chapter 33 will be returned to the inmate without further processing. Fla. Admin. Code. §33-103.014(1). In order to properly engage the grievance process, the inmate must refile a corrected grievance within the applicable timeframes discussed above. Fla. Admin. Code. §33-103.011, and §33-103.014(2).

6

Grievances submitted to a prison institution, whether an informal grievance or formal grievance (including those formal grievances that are appeals of informal grievances) are typically referred to as either "Institutional-Level," "formal," or "informal" grievances. (See DE#52, p.8). Grievances submitted to the Secretary of the FDC, whether direct grievances, or as appeals from Institutional-Level grievances, are typically referred to as "Bureau-Level" grievances. (Id.).

An inmate may obtain an extension of time in which to file an informal, formal, or direct grievance by making a request for an extension in writing and by demonstrating that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. Fla. Admin. Code. §33-103.011(2).

### Facts Established Pertinent to Exhaustion

*Defendant Keaton*

As a general matter, Defendant Keaton has established the the FDC Bureau of Inmate Grievance Appeals received eleven Bureau-level grievances filed between the date of Plaintiff's alleged assault (August 28, 2016) and the initiation of this lawsuit (February 6, 2017). Defendant Keaton responded to two of these eleven Bureau-level grievances. Of the eleven Bureau-Level grievances received by the FDC, only four referenced the fact of his transfer back to SFRC on October 24, 2016. The two Bureau-level grievances handled by Defendant Keaton and the four Bureau-level grievances referencing Plaintiff's transfer back to SFRC are as follows:

a) Bureau-level grievances handled by Defendant Keaton:
   ii) 16-6-42876 (submitted 9/28/16) [DE#52, Exhibit 1, Bates 000001 - 000005]; and

7

      ii) 16-6-44443 (submitted 10/20/16)[Id. at Bates 00006-00013].

Both of these Bureau-Level grievances were submitted by Plaintiff before his transfer back to SFRC on October 24, 2016. [Exhibit 1, Bates 000002 and 000007]. Moreover, Defendant Keaton did not respond to them until November–after Plaintiff's transfer back to SFRC had already occurred. [Exhibit 1, Bates 000001 and 000006]. It is, therefore, impossible for either of these grievances to have exhausted the issue of Defendant Keaton's "automatic denial" Plaintiff's grievances, or her alleged failure to prevent Plaintiff from being returned to SFRC.

    b) Bureau-Level grievance 17-6-00460 (submitted 12/25/16) [Id. at Bates 000015 - 000021:

This Bureau-level grievance was drafted by Plaintiff while housed at Okaloosa CI. [Id. at Bates 000015]. It is an appeal of the denial, by staff at Okaloosa CI, of Plaintiff's Institutional-level formal grievance (1612-115-066), which itself appealed the denial of an informal grievance (115-1612-002). In the informal grievance, Plaintiff claims that, while housed in protective management at Wakulla Correctional Institution[3] he signed a document stating that he would be willing to leave protective management if he would be transferred to Union Correctional Institution. [Id. at Bates 000019]. Plaintiff complains that, instead of being sent to Union as agreed, he was sent to "the only camp that I cannot return." [Id. at Bates 000019]. In the formal grievance that followed, Plaintiff clarified which institution he was referring to in the informal grievance: "I was sent to South Bay, which S. Monroe even admits is in the system

---

[3]Plaintiff was housed at Wakulla CI from January 1, 2016 through August 23, 2016, which is prior to the date of his alleged assault at SFRC on August 28, 2016. [DE#52, Exhibit 2, p.3]. Prior to August of 2016, Plaintiff had been housed at South Bay in 2008 and 2009. [Id. at 1].

8

as a camp I am not allowed to go to." [Id. at Bates 000017]. While the formal grievance makes passing reference to Plaintiff's attack at SFRC, this set of grievances seems to the reader to complain about the transfers to South Bay and Okaloosa, rather than the post-assault transfer back to SFRC. The grievances make only a passing reference to Plaintiff's transfer to SFRC, and do not make any reference to Defendant Keaton, her "automatic denial" of his grievances, or her alleged failure to prevent him from being returned to SFRC. The Bureau-Level grievance was ultimately denied by the Bureau. [Id. at Bates 000015]. Therefore, this Bureau-level grievance did not properly address Plaintiff's complaint against Defendant Keaton. Moreover, even if it did, it still would not satisfy the exhaustion requirements, as it was not filed within twenty days of the alleged wrong. Plaintiff was transferred back to SFRC on October 25, 2016, but did not file his informal grievance until November 30, 2016.[4]

c) Bureau-level grievance 17-6-5339 (submitted 10/21/16), [Id. at Bates 000029-000033].

This Bureau-level grievance is an appeal to the Bureau of the response to Plaintiff's Institutional-level formal grievance (grievance #1610-405-095, submitted October 21, 2016), which itself appealed the denial of an informal grievance, submitted 10/21/16 (grievance #405-1610-0064, submitted October 4, 2016). [Id. at Bates 000030 and 000032]. In both the informal and formal grievances, Plaintiff requested that he not be sent back to SFRC

---

[4]Defendant Keaton notes that, since he was still housed at Okaloosa CI at the time of filing, the informal grievance was timely with regard to Plaintiff's complaint that he did not want to be at Okaloosa CI. Defendant Keaton thus argues that this is more evidence that FDC interpreted this grievance as one regarding his assignment to Okaloosa CI as opposed to Union CI; that is, if the FDC were interpreting the grievance as being related to his transfer back to SFRC, the FDC would have returned it without action for being untimely.

9

and requested to be assigned to Union CI. [Id. at Bates 000030 and 000032]. Both grievances, however, were submitted by Plaintiff prior to Plaintiff's transfer back to SFRC on October 24, 2016 and prior to the dates of Defendant Keaton's responses to Plaintiff's two Bureau-level grievances (16-6-42876 and 16-6-44443) that she processed. [Id. at Bates 000030 and 000032]. Therefore, this Bureau-level grievance did not exhaust the issue of Defendant Keaton's "automatic denial" of Plaintiff's grievances, or her alleged failure to prevent Plaintiff from being returned to SFRC. Moreover, the Bureau-level grievance was returned to Plaintiff without action for being untimely. [Id. at Bates 000029]. Thus, this Bureau-level grievance did not exhaust Plaintiff's administrative remedies because it was never "finally denied" by the FDC. Lyons, 401 F.Supp.2d 1295.

d) Bureau-level grievance 17-6-06590, (Id. at Bates 000038-000041).

This Bureau-level grievance is Plaintiff's attempt at, once again, appealing informal grievance #405-1610-0064, which was addressed in Bureau-level grievance 17-6-5339, discussed immediately above. This Bureau-level grievance does not make it any clearer that Plaintiff was attempting to grieve regarding his transfer back to SFRC. Instead, in the Bureau-level grievance, Plaintiff writes solely that he was denied medical care. The Bureau-level grievance was returned to Plaintiff without action because he failed to attach the Institutional-level formal grievance which he was appealing, in violation of Fla. Admin. Code. § 33-103.007(5)(a)-©. [Id. at Bates 000038]. Thus, this Bureau-level grievance did not exhaust Plaintiff's administrative remedies because it was never "finally denied" by the FDC. Lyons, 401 F.Supp.2d 1295.

  e) Bureau-level grievance 17-6-06591 (<u>Id.</u> at Bates 000042-000050)

  This Bureau-level grievance is an appeal from two Institution-level formal grievances (grievance #1610-405-095 and #1610-405-063). Formal grievance 1610-405-095, submitted October 21, 2016) is a direct grievance to the Warden of South Bay. [<u>Id.</u> at Bates 000044]. Plaintiff appealed this formal grievance once before under Bureau-level grievance 17-6-5339, which is discussed above. Formal grievance 1610-405-063, submitted October 16, 2016, is an appeal of the denial of an informal grievance. Both 1610-405-095 and 1610-405-063 were submitted by Plaintiff prior to Plaintiff's transfer back to SFRC on October 24, 2016 and prior to the dates of Defendant Keaton's responses to the two Bureau-level grievances (16-6-42876 and 16-6-44443) that she processed. [<u>Id.</u> at Bates 000044 and 000046]. Therefore, these Bureau-level grievances did not exhaust the issue of Defendant Keaton's "automatic denial" of Plaintiff's grievances, or her alleged failure to prevent Plaintiff from being returned to SFRC. Moreover, the Bureau-level grievance was returned to Plaintiff without action for failure to attach copies of grievances necessary to evaluation of Plaintiff's complaints. [<u>Id.</u> at Bates 000042]. Thus, this Bureau-level grievance did not exhaust Plaintiff's administrative remedies because it was never "finally denied" by the FDC. <u>Lyons</u>, 401 F.Supp.2d 1295.

*Plaintiff's Response*[5]

In response to the motion to dismiss, Plaintiff attests that he never received training in the inmate grievance procedure as part of the required orientation each time he was transferred, and that repeated transfers between facilities prevented him from knowing how to proceed. (DE#64, ¶3). Plaintiff further asserts that for nine (9) months he was kept in a perpetual state of transfer and confinement where he was usually denied access to grievance forms, and was under constant threats of retaliation. (DE#63, ¶2; DE#64, ¶4). Plaintiff further alleges that, because of his transfers, he did not receive grievance responses until (3) months later once at Charlotte Correctional Institution, and references "defense exhibits #32-#33," as well as the defense's exhibit of Plaintiff's transfer history. (DE#64, ¶5).

Plaintiff states that Warden Maye tore up a grievance concerning Defendant Keaton, and threatened Plaintiff not to write anymore, insisting that actions of appeals officers cannot be grieved. (DE#63, ¶8). Plaintiff further asserts that, because he was being denied grievance forms and writing materials while at South Bay, he wrote a grievance concerning this very matter on plain paper, explaining that he did not have access to grievance forms, and that this letter was returned with a notation that he resubmit his grievance on the proper grievance form. (DE#64, ¶8 (referencing DE#62, Exh. B)). Plaintiff further alleges that he

---

[5] The Court sets forth here only Plaintiff's allegations regarding exhaustion that are reasonably specific, since conclusory allegations are insufficient to establish that an inmate exhausted claims, or that prison grievance procedures were unavailable. See Williams v. Barrow, 559 F. App'x 979, 988 (11th Cir. 2014). The Court also omits the myriad of allegations that Plaintiff seems to make about how Defendant Keaton either improperly handled or did not respond to his grievances, and how he filed grievances about being assaulted at SFRC and fearing transfer back to SFRC. The issue presented here is not what other grievances Plaintiff filed or tried to file. Rather, the issue is whether Plaintiff filed or tried to file a grievance complaining about Defendant Keaton's alleged mishandling of grievances, resulting in Plaintiff's transfer back to SRFC.

then obtained a grievance form from another inmate, but that his grievance concerning Defendant Keaton's alleged interference was personally returned to him by Warden Maye, who tore the grievance up in front of Plaintiff and told him that it was not possible to grieve appeals officers, and who threatened Plaintiff to stop filing grievances, or he would be returned to the SFRC. (DE#64, ¶9). Finally, Plaintiff again assert that, throughout the weeks he was at South Bay and the SFRC, he was denied grievance forms and threatened, so that he was unable to exhaust his administrative remedies and that, despite this, he continued to attempt to grieve the issues whenever he could. (DE#64, ¶14).

## Discussion

While pre-suit exhaustion of administrative remedies is mandatory, Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), in limited circumstances an inmate's administrative remedies may be deemed to have been rendered "unavailable," but the Plaintiff "must point to specific facts showing that officials prohibited or blocked his use of the grievance process." Heard v. Allen, No. 1:09-CV-119 (WLS), 2010 WL 3855235, at *4 (M.D.Ga., Aug.12, 2010). Courts have found that such circumstances may include refusal of forms needed to pursue an institution's established grievance process; informing an inmate that a procedural step in the established administrative process need not or cannot be pursued; or threats of retaliation of a sufficient nature. See e.g. Miller v. Norris, 247 F.3d 736, 740 (8 Cir.2001) (holding that inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not "available" to him); Miller v. Tanner, 196 F.3d 1190, 1194 (11 Cir.1999) (inmate was not required to file an appeal after being

13

told unequivocally, and in writing, that appeal was precluded; plaintiff produced memorandum denying grievance and informing plaintiff that no appeal was available); Mosier v. Fla. Dept. of Corr., No. 5:11-cv-399-MP-GRJ, 2012 WL 3239385, at *4 (N.D.Fla., June 19, 2012) (An administrative remedy may be deemed "unavailable for PLRA purposes if prison officials render pursuit of the remedy irrational through threats of substantial retaliation."); Cole v. Sec'y Dept. of Corr., 451 Fed.Appx. 827, 828 (11th Cir. 2011) (to demonstrate such unavailability as a result of threats, a prisoner must establish that: (1) the threat actually deterred him from lodging a grievance or pursuing a particular part of the administrative process; and (2) the threat is one that would so deter a reasonable inmate of ordinary firmness and fortitude) (*citing* Turner v. Burnside, 541 F.3d 1077, 1084–1085 (11 Cir.2008)).

Here, Plaintiff's grievance history, spotty as it may be, demonstrates that Plaintiff knew exactly how the grievance process works. Indeed, Plaintiff's Emergency Request that he attempted to send directly to the Florida Department of Corrections states that it was necessary for Plaintiff to by-pass the Institutional level procedures, because he was in imminent danger of being subjected to brutal attacks. (DE#62, Exh.B). This level of sophistication belies any contention that Plaintiff somehow was ignorant of the grievance process. Moreover, regardless of whether FDOC regulations require that inmates be re-trained each time they are transferred, the fact remains that the procedure is the same throughout the FDOC, and Plaintiff was in the system long before the alleged interference with his attempts to grieve began. In sum, the Court rejects Plaintiff's contention that the grievance procedure was somehow unavailable to him because he was not trained in how to exhaust his administrative remedies in compliance with FDC procedure.

14

However, Plaintiff has alleged with specificity that, throughout the period that he was confined at South Bay and SFRC, he was denied access to grievance forms and writing materials, and that Warden Maye personally returned a grievance that Plaintiff attempted to file against Defendant Keaton to him, stating that Plaintiff could not grieve appeals officers, and threatening to return him to SFRC, where he allegedly had been brutally and sexually assaulted by a gang of officers, if he continued to file grievances. The Court finds this sufficient to establish that the grievance process was unavailable to Plaintiff during that time, not only because he was denied the necessary forms and physically prevented from filing grievances, but also because Warden Maye's threats actually deterred Plaintiff from filing grievances, and would deter a reasonable inmate of ordinary firmness and fortitude from doing so. Indeed, the Emergency Request that Plaintiff attempted to send directly to the Secretary of the Department of Corrections corroborates Plaintiff's claims that he was being denied grievance forms, and being told that he could not grieve the actions of appeals officers at the Institutional level. (DE#62, Exh.B). Moreover, Plaintiff's Inmate Movement/Transfer History (DE#52-2) demonstrates that Plaintiff was in fact transferred multiple times between FDC facilities since the time of the alleged attack, and Plaintiff has alleged that he has been threatened and denied access to grievance materials throughout that time. The Court thus finds the totality of these allegations sufficiently specific to conclude that the grievance procedure was rendered unavailable for Plaintiff to take issue with Defendant Keaton's alleged acts in this case.

<u>Conclusion</u>

Based on the foregoing, it is recommended that Defendant Keaton's Motion to Dismiss for Failure to Exhaust Administrative Remedies (DE#52) be DENIED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. <u>See</u> 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790,794 (1989); <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

It is so recommended at Miami, Florida, this 17th day of November, 2017.

							_____
							UNITED STATES MAGISTRATE JUDGE

Copy furnished:

Bobby Minnis
B05683
Bay Correctional Facility
Inmate Mail/Parcels
5400 Bayline Drive
Panama City, FL 32404

Madeleine Mannello Scott
Office of the Attorney General
General Civil Litigation
110 SE 6th Street, 10th Floor (Civil)
Fort Lauderdale, FL 33301

16