```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 17-CIV-20575-GAYLES
                              MAGISTRATE JUDGE P.A. WHITE
```

BOBBY MINNIS,                     :

    Plaintiff,                :            REPORT
                                         OF MAGISTRATE JUDGE
v.                                :           (DE#61)

Julie Jones, et al.               :

    Defendants.               :
_____

## Introduction

The plaintiff Bobby Minnis has filed a <u>pro se</u> civil rights action raising claims under 42 U.S.C. §1983. This cause is presently before the Court upon Defendant Lewis' Motion to Dismiss for Failure to Exhaust Administrative Remedies (DE#61). The Court has considered the motion (DE#61), and Plaintiff's Brief in Opposition thereto (DE#671), as well as Plaintiff's Declaration in Opposition (DE#69), and Plaintiff's Statement of Disputed Factual Issues (DE#70).[1]

## General Allegations

Plaintiff alleges that, on August 28, 2016, he was removed from his confinement cell at South Florida Reception Center ("SFRC"), taken to an area of the confinement dorm not captured by cameras, and brutally beaten and sexually abused by eight corrections officers. [DE#20, pgs. 5-6].

Plaintiff claims that, a few hours later, after shift change, Defendant Lewis was conducting rounds in the dorm with two other

---

[1] More than one month has passed since Plaintiff filed his responsive documents, and Defendant Keaton has not filed any reply.

1

officers when she saw Plaintiff "unconscious" and "crumpled on the floor." (D.E. 20, pg. 7, ¶7). Defendant Lewis allegedly "freaked" and had Plaintiff rushed to medical in a wheelchair for "Emergency Medical Assistance." (D.E. 20, pg. 7, ¶7). After learning, however, that it was officers who had caused Plaintiff's injuries,

> Captain Lewis called off the medical emergency and had the Plaintiff put back into his cell; refusing to hear his pleas for protection once Charley Shift returned that evening and found out that he had reported what they have done.

(D.E. 20, pg. 7, ¶7).

## Standard of Review

The PLRA requires an inmate to exhaust administrative remedies before filing a civil rights action. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). The requirement is mandatory and there is no discretion to waive it. Porter, 534 U.S. at 524. The PLRA requires proper exhaustion, which means a prisoner must comply with the procedural rules and deadlines of the institution's grievance system. Woodford v. Ngo, 548 U.S. 81 (2006).

The current exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Porter, 534 U.S. at 516-17. In other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. Id. at 517.

2

There are no futility or inadequacy exceptions to the PLRA's mandatory exhaustion requirement. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). A prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Id. at 1325-26. For instance, an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. Id. Further, prisoners must have sought to file out-of-time grievances and/or grievance appeals in order to exhaust their administrative remedies under the PLRA. A prisoner who has not sought leave to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999). Even if an appeal would have been futile, the requirement that it be filed is not waived. See Alexander, 159 F.3d at 1325-26.

The Eleventh Circuit has held that exhaustion of administrative remedies is a matter in abatement and not an adjudication on the merits and, therefore, an exhaustion defense is not properly raised in a summary judgment, but it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant v. Rich, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1998) (internal quotation marks omitted)). The court further explained that even though motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b), federal courts have traditionally "entertained certain pre-answer motions that are not expressly provided for by the rules." Id. (quoting Ritza, 837 F.2d at 369) (internal quotation marks omitted). The court went on to state that exhaustion of administrative remedies is a matter of judicial administration, and held that exhaustion should be decided on a

3

Rule 12(b) motion to dismiss. Id. (citing Johnson v. Meadows, 418 F.3d 1152, 1153-54 (11th Cir. 2005). Where exhaustion is treated as a matter in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." Id. (citing Ritza, 837 F.2d at 369).

> The Eleventh Circuit has explained that:
>
> [w]hen deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendant's versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion." Id. (citing Bryant, 530 F.3d at 1373-74, 1376).

Myles v. Miami-Dade County Corr. & Rehab. Dept., 476 Fed.Appx. 364, 366 (11th Cir. 2012).

### Applicable Procedures

In the context of suits regarding conditions of prison life within the FDC, in order to exhaust his administrative remedies, Plaintiff must follow the administrative procedures set forth in Chapter 33 of the Florida Administrative Code. Chapter 33 provides a system for prisoners to submit grievances and appeal grievance rulings with which they are dissatisfied. Fla. Admin. Code. §33-103.001. Thus, "[a] Florida inmate's administrative remedies are not exhausted until his grievance has finally been appealed to, and denied by, the Secretary of the Florida Department of Corrections." Lyons v. Trinity Services Group, Inc., 401 F.Supp.2d 1290, 1295 (S.D. Fla. 2005).

4

The first step in the grievance procedure is for the inmate to submit an informal grievance at the institutional level, using form DC6-236. Fla. Admin. Code. §33-103.002(12), and §33-103.005(1). An inmate may file an informal grievance regarding almost any category of complaint. Fla. Admin. Code. §33-103.005(1). An inmate may not skip this first step unless his grievance falls into certain categories of grievances. Id. ("Inmates shall utilize the informal grievance process prior to initiating a formal grievance."). With regard to those categories, including grievances of an emergency nature,[2] grievances alleging violations of the Americans with Disabilities Act, grievances alleging sexual abuse, and medical grievances, the inmate is permitted, but not required, to skip the filing of an informal grievance and file a formal grievance with the warden's office, using form DC1-303. Fla. Admin. Code. §33-103.002(5), §33-103.005(1), and §33-103.006(3).

An inmate may also present certain limited categories of grievances directly to the Secretary of the FDC ("Secretary"). The categories of grievances that may be presented directly to the Secretary are "[e]mergency grievances and grievances of reprisals, protective management, admissible reading material, grievances concerning sentence structure (release date calculations), inmate banking issues or sexual abuse grievances when the abuse is alleged to have been committed by the Warden of the institution where the inmate is currently housed..." Fla. Admin. Code. §33-103.002(7), and §33-103.007(6)(a). Direct grievances to the Secretary are filed using form DC1-303. Fla. Admin. Code. §33-103.002(7), and §33-103.007(1). Grievances sent to the Secretary are processed by the FDC Bureau of Inmate Grievance Appeals ("Bureau").

---

[2] An "emergency grievance" is a grievance regarding "matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code. §33-103.002(4).

In order to be timely, an informal grievance must be received by the designated prison official within twenty calendar days of the incident date. Fla. Admin. Code. §33-103.011(1)(a). A formal grievance must be received by the designated prison official within fifteen calendar days of the incident date. Fla. Admin. Code. §33-103.011(1)(b). A direct grievance must be received by the Secretary within fifteen calendar days of the incident. Fla. Admin. Code. §33-103.011(1)(d).

Should the inmate's institutional level grievance (informal or formal) be denied, he must then participate in the grievance appeals process in order to properly exhaust his claims. Lyons, 401 F.Supp.2d at 1295.

To appeal the institution's denial of an informal grievance, the inmate must, within fifteen calendar days of receiving the denial, file a formal grievance at the institutional level and attach the contested informal grievance. Fla. Admin. Code. §33-103.006(1)(a) & (g), and §33-103.011(1)(b)(1).

To appeal the institution's denial of a formal grievance (whether the formal grievance was filed as the initial grievance or as the appeal of an informal grievance), the inmate must, within fifteen calendar days of receiving the denial, file a grievance appeal to the Secretary and attach the contested grievances. Fla. Admin. Code. §33-103.007(1) & (5), and §33-103.011(c).

Appeals that are submitted late or are otherwise in noncompliance with Chapter 33 will be returned to the inmate without further processing. Fla. Admin. Code. §33-103.014(1). In order to properly engage the grievance process, the inmate must refile a corrected grievance within the applicable timeframes discussed above. Fla. Admin. Code. §33-103.011, and §33-103.014(2).

Grievances submitted to a prison institution, whether an informal grievance or formal grievance (including those formal grievances that are appeals of informal grievances) are typically

referred to as either "Institutional-Level," "formal," or "informal" grievances. (See DE#52, p.8). Grievances submitted to the Secretary of the FDC, whether direct grievances, or as appeals from Institutional-Level grievances, are typically referred to as "Bureau-Level" grievances. (Id.).

An inmate may obtain an extension of time in which to file an informal, formal, or direct grievance by making a request for an extension in writing and by demonstrating that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. Fla. Admin. Code. §33-103.011(2).

### Facts Established Pertinent to Exhaustion

*Defendant Lewis*

Defendant has established that, of the various grievances that Plaintiff filed, only one names Defendant Lewis. (DE#61, Exh.1, pp.1-3). That grievance states:

> Captain Lewis found me the next day and had me sent to medical, but the nurse refused to treat me, and because to create any medical record of my injuries would be evidence against their fellow officers, even Captain Lewis refused to take pictures of me.

(Exhibit 1, Bates 000005).

*Plaintiff's Response*[3]

In response to the motion to dismiss, Plaintiff states that he never once received the mandatory training in grievance procedures each time he was transferred between institutions, and that he was thus hindered in knowing how to proceed. (DE#69, ¶3; 70, ¶1).

---

[3]The Court sets forth here only Plaintiff's allegations regarding exhaustion that are reasonably specific, since conclusory allegations are insufficient to establish that an inmate exhausted claims, or that prison grievance procedures were unavailable. See Williams v. Barrow, 559 F. App'x 979, 988 (11th Cir. 2014).

7

Plaintiff further asserts that for nine (9) months he was kept in a perpetual state of transfer and confinement where he was usually denied access to grievance forms, and was under constant threats of retaliation. (DE#69, ¶4). Plaintiff further alleges that, because of his transfers, he did not receive grievance responses until (3) months later once at Okaloosa Correctional Institution, and references "defense exhibits #32-#33," as well as the defense's exhibit of Plaintiff's transfer history. (DE#69, ¶5). Plaintiff also asserts that, because he was being denied grievance forms and writing materials while at South Bay, he wrote a grievance concerning this very matter on plain paper, explaining that he did not have access to grievance forms, and that this letter was returned with a notation that he resubmit his grievance on the proper grievance form. (DE#69, ¶9 (referencing DE#71, Exh. B)). Plaintiff further alleges that, after Plaintiff managed to obtain a grievance form, Warden Maye tore up a grievance concerning Defendant Lewis and others, with threats not to write anymore. (DE#69, ¶9).

## Discussion

While pre-suit exhaustion of administrative remedies is mandatory, Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), in limited circumstances an inmate's administrative remedies may be deemed to have been rendered "unavailable," but the Plaintiff "must point to specific facts showing that officials prohibited or blocked his use of the grievance process." Heard v. Allen, No. 1:09-CV-119 (WLS), 2010 WL 3855235, at *4 (M.D.Ga., Aug.12, 2010). Courts have found that such circumstances may include refusal of forms needed to pursue an institution's established grievance process; informing an inmate that a procedural step in the established administrative process need not or cannot be pursued; or threats of retaliation of a

8

sufficient nature. See e.g. Miller v. Norris, 247 F.3d 736, 740 (8 Cir.2001) (holding that inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not "available" to him); Miller v. Tanner, 196 F.3d 1190, 1194 (11 Cir.1999) (inmate was not required to file an appeal after being told unequivocally, and in writing, that appeal was precluded; plaintiff produced memorandum denying grievance and informing plaintiff that no appeal was available); Mosier v. Fla. Dept. of Corr., No. 5:11-cv-399-MP-GRJ, 2012 WL 3239385, at *4 (N.D.Fla., June 19, 2012) (An administrative remedy may be deemed "unavailable for PLRA purposes if prison officials render pursuit of the remedy irrational through threats of substantial retaliation."); Cole v. Sec'y Dept. of Corr., 451 Fed.Appx. 827, 828 (11th Cir. 2011) (to demonstrate such unavailability as a result of threats, a prisoner must establish that: (1) the threat actually deterred him from lodging a grievance or pursuing a particular part of the administrative process; and (2) the threat is one that would so deter a reasonable inmate of ordinary firmness and fortitude) (*citing* Turner v. Burnside, 541 F.3d 1077, 1084–1085 (11 Cir.2008)).

    Here, Plaintiff's grievance history, spotty as it may be, demonstrates that Plaintiff knew exactly how the grievance process works. Indeed, Plaintiff's Emergency Request that he attempted to send directly to the Florida Department of Corrections states that it was necessary for Plaintiff to by-pass the Institutional level procedures, because he was in imminent danger of being subjected to brutal attacks. (DE#71, Exh.B). This level of sophistication belies any contention that Plaintiff somehow was ignorant of the grievance process. Moreover, regardless of whether FDC regulations require that inmates be re-trained each time they are transferred,

9

the fact remains that the procedure is the same throughout the FDC, and Plaintiff was in the system long before the alleged interference with his attempts to grieve began. In sum, the Court rejects Plaintiff's contention that the grievance procedure was somehow unavailable to him because he was not trained in how to exhaust his administrative remedies in compliance with FDC procedure. Moreover, Plaintiff's contention that the Emergency Request that he submitted directly to the FDC somehow exhausted his claims against Defendant Lewis is similarly without merit. That grievance does not even mention Defendant Lewis, and the only fair reading of it is that Plaintiff was complaining about the failure to respond to his grievances regarding the alleged assault at the SFRC, and that he had been told that he could not grieve deliberate indifference by an appeals officer. (See DE#71, Exh.B).

Plaintiff has alleged with specificity that, throughout the period that he was confined at South Bay and SFRC, he was denied access to grievance forms and writing materials, and that Warden Maye tore up a grievance that Plaintiff attempted to file against Defendant Lewis. Unlike his attempts to grieve his complaints against Defendant Keaton, however, neither the fact that Plaintiff was denied the necessary forms and physically prevented from filing grievances in general, nor Warden Maye's threats, actually deterred Plaintiff from filing grievances against Defendant Lewis. Indeed, the thrust of Plaintiff's response is that the statements made in his grievance against Defendant Lewis is sufficiently specific to have put the FDC on notice of Plaintiff's complaint against her. The Court finds that, under the totality of the circumstance, the grievance procedure was not rendered unavailable to Plaintiff to take issue with Defendant Lewis' alleged acts in this case.

However, that does not end the inquiry. It is undisputed that Plaintiff did file a grievance naming Defendant Lewis. And as set forth above, the parties dispute whether that grievance was

sufficiently specific to have put the FDC on notice of the nature of Plaintiff's complaint against Defendant Lewis.

As a general rule, grievances need only "afford corrections officials time and opportunity to address complaints internally." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The Eleventh Circuit has held that exhaustion requires an inmate to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide. Brown v. Sikes, 212 F.3d 1205, 1210 (11th Cir. 2000). This rule logically requires that the essence of the claim be clearly stated, if the policies underlying the exhaustion requirements are to be given meaningful effect. See Jones v. Bock, 549 U.S. 199, 219, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (the primary purpose of a grievance is to alert prison officials to the problem).

The primary purpose of a grievance complaint is to alert prison officials to a problem to be addressed; it is not to provide personal notice to a particular official that he may be sued. Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir.2004). Instead, a grievance complaint must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. Id. Indeed, because the policies underlying the grievance notice procedure do not require an inmate to include every detail of the complained-of incident, prison regulations generally only require enough information to put officials on notice of the nature of the violation. See, e.g., Gomez v. Winslow, 177 F.Supp.2d 977, 983, 985 (N.D.Cal.2001) (holding that prisoner need not provide prison officials with a "preview of his lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant" in his administrative appeal."); Irvin v. Zamora, 161 F.Supp.2d 1130,

1134-35 (S.D.Cal.2001) (holding that so long as the plaintiff's grievance "present[s] the relevant factual circumstances giving rise to a potential claim," the basic purposes of the exhaustion requirement are fulfilled); Houser v. Corizon, No. 1:13-CV-00006-EJL, 2014 WL 4249873, at *6 (D. Idaho Aug. 27, 2014)("A plaintiff need not list every detail in a grievance that he may later include in a lawsuit."); Winburn v. Hadfield, No. 2:06-CV-130, 2008 WL 783580, at *6 (W.D. Mich. Mar. 20, 2008)("The fact that Plaintiff did not describe every detail of his condition at the time of the incident or every comment made by Defendant Hadfield, does not render his grievance ineffective to exhaust his claims.").

A useful analog is the exhaustion requirement of an employment discrimination case. Under Title VII, a complainant must have presented his or her claim to the EEOC for investigation before filing a claim in court. In that context, courts have held that "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1332 (11th Cir.2000). In clarifying what is reasonable, the Eleventh Circuit has found that "[a]s long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir.1989) (citations omitted). "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate." Wu, 863 F.2d at 1547; see also Ray v. Freeman, 626 F.2d 439, 443 (5th Cir.1980).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S.

at 218, 127 S. Ct. at 922 (*citing* <u>Woodford</u>, 548 U.S. at 88, 126 S.Ct. 2378). Here, no rule or regulation has been cited by Defendant Lewis for the proposition that a prisoner must provide every detail of the complained-of incident when filing a grievance. Indeed, the applicable administrative procedures require only that, when completing the inmate request form for submission as an informal grievance, "the inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." <u>Fla. Admin. Code.</u> § 33-103.005(2)(b)(2).

> Here, as set forth above, Plaintiff's grievance states:
> 
> Captain Lewis found me the next day and had me sent to medical, but the nurse refused to treat me, and because to create any medical record of my injuries would be evidence against their fellow officers, even Captain Lewis refused to take pictures of me.

(Exhibit 1, Bates 000005). Thus, the grievance clearly names Defendant Lewis, and any fair reading of it states that Defendant Lewis refused to take pictures of Plaintiff's injuries because it would create a record against "their" fellow officers (i.e., Defendant Lewis and the nurse's). This is more than sufficient to have put defendants on notice that Defendant Lewis participated in some alleged denial of medical treatment and an alleged cover-up.

Defendant Lewis argues that the grievance "gives the reader the impression that Capt. Lewis was not even present for Plaintiff's treatment with the nurse." (DE#61, 9). The Court disagrees. As an initial matter, as set forth above, Plaintiff clearly states that Defendant Lewis refused to document alleged injuries that could implicate "their" fellow officer. In addition, the Court disagrees that the statement gives the impression that Defendant Lewis was not even present. And the fact that reasonable readers apparently can disagree as to what "impression" Plaintiff's grievance gives about Defendant Lewis serves to illustrate

13

grievances need only put prison officials on notice of the general nature of the complaint---so that they can investigate.

Plaintiff's allegations that Defendant Lewis allegedly called off the medical emergency and put Plaintiff back in his cell would certainly have been within the scope of any investigation which could have "reasonably be[en" expected to grow" out of his grievance. See Alexander, 207 F.3d at 1332. As such, Plaintiff has sufficiently exhausted his claims against Defendant Lewis. See Woodford, 548 U.S. at 93 (grievances need only "afford corrections officials time and opportunity to address complaints internally"); see also Johnson, 385 F.3d at 522 (a grievance complaint must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit).

## Conclusion

Based on the foregoing, it is recommended that Defendant Keaton's Motion to Dismiss for Failure to Exhaust Administrative Remedies (DE#61) be DENIED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

14

It is so recommended at Miami, Florida, this 20th day of November, 2017.

                                                             UNITED STATES MAGISTRATE JUDGE

Copy furnished:

Bobby Minnis
B05683
Bay Correctional Facility
Inmate Mail/Parcels
5400 Bayline Drive
Panama City, FL 32404

Madeleine Mannello Scott
Office of the Attorney General
General Civil Litigation
110 SE 6th Street, 10th Floor (Civil)
Fort Lauderdale, FL 33301