UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-20575-CV-GAYLES
MAGISTRATE JUDGE REID

BOBBY MINNIS,

        Plaintiff,

v.

GEO CORPORATION, et al.,

        Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE RE:
## DEFENDANT AVRIAL KEATON'S MOTION FOR SUMMARY JUDGMENT [ECF 241]

Plaintiff Bobby Minnis filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, against multiple defendants for damages concerning events that allegedly occurred while he was incarcerated by the Florida Department of Corrections.

This case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b), S.D. Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2019-2.

In her motion for summary judgment, Defendant Keaton claims that judgment as a matter of law pursuant to Fed. R. Civ. P. 56 is warranted in this case, because the

pleadings and record evidence show Plaintiff has failed to state a claim of failure to protect, and therefore, Defendant Keaton is entitled to qualified immunity. [ECF 241].

For its review, this report considered the Defendant's motion for summary judgment [ECF 241], Plaintiff's complaint [ECF 20], Plaintiff's declaration in opposition to the motion [ECF 258], his statement of disputed facts [ECF 257], the Defendant's reply [ECF 260], and all exhibits relied upon by both parties. For the reasons set forth in this Report, the Undersigned recommends that the Defendant's motion be GRANTED.

## I.    Standard of Review

Under Rule 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion

for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)), the moving party necessarily carries the burden. *Great Am. All. Ins. Co.*, 847 F.3d at 1331 (relying upon *Celotex*, 477 U.S. at 323). In meeting that burden, nonmoving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex*, 477 U.S. at 324).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co.*, 847 F.3d at 1331 (relying upon

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am. All. Ins. Co.*, 847 F.3d at 1331 (relying upon *Anderson*, 477 U.S. at 248). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). In sum, where no reasonable juror could find in the non-moving party's favor, summary judgment is appropriate. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir.1997).

In the summary judgment context, courts must still construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). Notwithstanding, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c)" courts may consider the fact undisputed for purposes of the motion and grant summary judgment if the facts in the record—including those considered undisputed—illustrate that the movant is entitled to judgment in its favor. Fed. R. Civ. P. 56(e)(2).

Moreover, an inmate's statements in a verified complaint or a sworn response to a motion for summary judgment is appropriately treated as "testimony" when ruling on a summary judgment motion. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc)

4

("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") and *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment)).

## II.    Applicable Law

### A. Failure to Protect

It is well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates. *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981). *See also Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984) ("Prison officials may be liable where they are 'deliberately indifferent to [a prisoner's] constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow  inmates.'")  (quoting *Branchcomb  v.  Brewer*,  669  F.2d  1297,  1298  (8th  Cir. 1982)).

5

For a prison or jail official to be constitutionally liable for failure to protect the safety of an inmate, two requirements must be met. First, the deprivation alleged must be, objectively, "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Hudson v. McMillian*, 503 U.S. 1 (1992). An inmate must show that he is or was incarcerated under conditions that pose a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. at 834. In cases predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. *Wilson v. Seiter*, 501 U.S. at 302-03; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, *Davidson v. Cannon*, 474 U.S. 344 (1976); *Estelle*, 429 U.S. at 104. Thus, in order to state a claim of cruel and unusual punishment, the courts have required that a prisoner must allege a conscious or callous indifference to his rights by prison officials. *Brown v. Hughes*, 894 F.2d 1533, 1537-38 (11th Cir. 1990). Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which

is not. When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under Section 1983. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Estelle*, 429 U.S. at 106; *Byrd v. Clark*, 783 F.2d 1002, 1006 (11th Cir. 1986).

The Supreme Court has emphasized that liability attaches when "the official knows of and disregards an excessive risk to an inmate's health or safety" and where the official is "both…aware of the facts from which the inference could be drawn that a substantial risk of harmexists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also LaMarca v. Turner*, 995 F.2d 1535, 1536 (11th Cir. 1993). Accordingly, there must be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). *See also LaMarca v. Turner*, 995 F.2d at 1536. "Personal participation...is only one of several ways to establish the requisite causal connection." *Zatler*, 802 F.2d at 401. The defendant prison official must, however, ignore a substantial risk of serious harm to the inmate.

B. Qualified Immunity

A state actor, sued in his or her individual capacity, pursuant to 42 U.S.C. § 1983, is entitled to raise qualified immunity as a defense. *See Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998). To prevail on a qualified immunity defense, a

defendant must demonstrate that the conduct complained of took place while they were performing a discretionary function. *See Johnson v. Boyd*, 701 F. App'x 841, 848 (11th Cir. 2017). Once this showing has been made, the burden then shifts to the Plaintiff to demonstrate that: "(1) the officers violated a constitutional right; and, (2) the right was clearly established at the time of the violation." *Johnson v. Boyd*, *supra.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The constitutional right must be sufficiently clear for a reasonable official to understand that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002)(citations omitted). To be eligible for qualified immunity, the government officials must first show that they were acting within their discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

### III.   Plaintiff's Version of Events

Plaintiff alleges that on August 28, 2016, he was removed from his confinement cell at South Florida Reception Center ("SFRC"), taken to an area of the confinement dorm not captured by camera, and brutally beaten and sexually abused by eight corrections officers. [ECF 20, pp. 5-6]. The next day, Plaintiff was transferred to South Bay Correctional Facility ("South Bay"), where he reported the incident. [*Id.* p. 7]. While at South Bay, the assistant warden told Plaintiff that the officers at SFRC did not appreciate him reporting his assault to the Inspector General, and were asking for him to be sent back. [*Id.*]. Towards the end of October,

when he found out he was being sent back [ECF 241-1, p. 163], Plaintiff filed an appeal for protection to the secretary of the Florida Department of Corrections ("FDOC"). [ECF 20, p. 7]. Defendant Keaton, who is an officer working directly under the FDOC Secretary [ECF 258, p. 1], responded saying that the matter had been reported to the Inspector General. [ECF 241-1, p. 164]. Keaton, however, refused to report that Plaintiff was in danger of being sent back to SFRC. [*Id*. p. 165]. Keaton could have called 911, the FDLE, or the KGB and communicated to someone that he was in danger. [*Id*. p. 121].

As a result of Keaton's failure to protect, Plaintiff was sent back to SFRC, where he was brutally assaulted and tortured for three weeks by the same officers who had originally abused him. [ECF 20, p. 8]. The officers demanded that Plaintiff drop his lawsuit, and subjected him to psychological torture and intentional emotional distress. [*Id*.].

## IV.  Defendant's Version of Events

Officer Avrial Keaton is an appeals officer with the Florida Department of Corrections. [ECF 241-7, ¶¶1-2]. As an appeals officer, Keaton's duties consist of receiving appeals and providing responses. [*Id*., ¶3]. Appeals officers are required to report any possible threats to an inmate in the MINS system. [*Id*., ¶ 4]. Other than reporting threats through the system, an appeals officer, however, does not have any decision-making authority in the protection of inmates. [*Id.*]. When there is an

allegation that an inmate is being abused by staff, Keaton reports the incident in the MINS system and then that report is sent to the Inspector General who makes the final determination. [*Id*., ¶5]. When responding to an inmate's pleas for protection from staff, FDOC policy requires that the appeal be referred to the Protective Management Unit. [*Id*., ¶6]. The FDOC Bureau of Inmate Grievance Appeals received 11 bureau-level grievances filed by Plaintiff between August 28, 2016, the date of the alleged assault and the initiation of the lawsuit on February 6, 2017. [*Id*., ¶8]. Keaton responded to two of those grievances. [*Id.*, ¶10].

Specifically, in Grievance 16-6-42876, submitted on September 28, 2016, Plaintiff wrote a Request for Administrative Appeal to the FDOC Secretary in which he stated:

> I was beaten by officers with two ribs broken, who then sodomized me with a broom handle and then refused medical treatment. Nothing is being done to identify and punish my attackers. I need their names, and I need it made clear that I will never be put back in their control ever again. It is immoral for D.O.C. to have a custom of locking up the victim while protecting the felony victimizers. I protest being attacked by DOC officers who are being protected, and who have vowed to have me brought back to South Florida Reception Center to beat me again.

[ECF 241-5, p. 5]. This grievance was received on October 5, 2016. [*Id*.].  On November 2, 2016, Defendant Keaton responded, stating that the "subject of [Plaintiff's] grievance was previously referred to the Office of the Inspector General," and that it was the OIG's responsibility "to determine the amount and type

of inquiry that will be conducted." [ECF 241-5, p. 4]. As such, Plaintiff's request for action was denied.

In Grievance 16-6-44443, submitted on October 20, 2016, Plaintiff wrote a Request for Administrative Appeal to the FDOC Secretary in which he stated:

> As my roommate Micheal Lebron and the cameras will show, I was never taken out of my cell on Wednesday October 12 to see your team, nor have I been given a legitiment [sic] reason for being held in confinement in direction violation of PREA standards. However, the warden did stop by my cell to tell me that South Florida Reception Center wants me back, apparently asking that I be returned by him as a favor. You deny me all medical and psychological assistance and punish me for reporting having my bones broken by officers and being sodomized by them, and as the warden threatens, you intend on sending me back to them to be abused some more for reporting them. Thus making Geo Corp and the warden of South Bay Liable.

[ECF 241-5, p. 10]. Keaton responded on November 9, 2016, stating that the response Plaintiff received at the institutional level was appropriate to address the concerns that he raised at the institutional and central office levels. [ECF 241-5, p. 9].

Defendant Keaton submitted these responses to Plaintiff after he had already been transferred back to SFRC on October 24, 2016. [ECF 241-7, ¶13]. As an appeals officer, she is not responsible for nor does she play an active role in determining where an inmate will be housed. [*Id.*, ¶14].

## V.    Discussion

A. Deliberate Indifference

First, the Defendant argues that because Plaintiff has failed to establish a violation of a constitutional right resulting from Keaton's denial of his appeals, his claim is not actionable under § 1983. [ECF 241, p. 6]. More specifically, the Defendant suggests that FDOC's prison grievance procedure is a procedural right that does not give rise to any protected "liberty" interest envisioned by the Fourteenth Amendment. [*Id.*].

This argument is unpersuasive. While it is true that a prison officials' failure to process an inmate's grievances on its own does not create a constitutionally protected liberty interest, *see Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993), Plaintiff has alleged facts to sufficiently tie Keaton's handling of his appeal to his constitutional right to be protected from the threat of violence. *Farmer*, 511 U.S. at 828. In pertinent part, he alleges that he reported the threats of violence to Defendant Keaton and that she failed to protect him by taking any action to stop his transfer back to SFRC. Thus, the basis of Plaintiff's claim is actionable under § 1983.[1]

Next, the Defendant argues that Plaintiff has not met the elements of establishing a failure-to-protect claim. [ECF 241, p. 6]. For purposes of this report,

---

[1] It should also be noted that the Court previously concluded that Plaintiff's claim against Officer Keaton was actionable when it permitted his claim against her to proceed. [ECF 25; 27].

the Undersigned assumes *arguendo* that the alleged threat of an assault upon return to SFRC, and Plaintiff's alleged assault once he got there, constituted a substantial risk of serious harm. Thus, the question is whether Keaton was deliberately indifferent to that risk and, if so, whether her deliberate indifference caused the second assault.

"The second element—the defendant's deliberate indifference to that risk— has two components: one subjective and one objective." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually subjectively knew that an inmate faced a substantial risk of serious harm. *Id.* (citing *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007)). To satisfy the objective component, a plaintiff must produce evidence that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. *Id.*

Here, it is undisputed that Keaton was (1) not present when the alleged sexual assault and ensuing threats were made against Plaintiff, and (2) has never met or spoken with Plaintiff personally. As such, Plaintiff asserts that she obtained subjective knowledge of the risk he faced when she received his grievance appeals, where he notified her of the threats. In the first grievance appeal, Plaintiff did not state that he had been threatened that he would be transported back to SFRC. Instead,

13

he made a general allegation that officials who assaulted him "have vowed to have me brought back to South Florida Reception Center to beat me again." [ECF 241-1, p. 5]. He does not explain how he got this information or when he received it. Such general allegations of possible threats do not show that Defendant Keaton was subjectively aware of the risk to Plaintiff. *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2014) (in the inmate-on-inmate context, deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature"); *Lavender v. Kearney*, 206 F. App'x 860, 863-84 (11th Cir. 2006) ("General knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference"). Moreover, the failure to investigate this grievance does not, in itself, shown that Defendant Keaton had "knowledge of specific facts from which an inference of a substantial risk of serious harm could be drawn." *See Winstead v. Williams*, 750 F. App'x 849, 853 (11th Cir. 2018).

Regarding the second grievance appeal, Plaintiff alleged that the warden told him that SFRC "want[ed] [him] back" and that "you intend on sending me back to them to be abused some more for reporting them." [ECF 241-5, p. 10]. This general, unparticularized threat of "abuse" at some future date in time does not establish that Defendant Keaton knew of the specific risk to Plaintiff. At the time of Plaintiff's grievance, he was confined at South Bay, and Defendant Keaton does not, as an

appeals officer, play an active role in determining where an FDOC inmate will be housed.[2] [ECF 241, p. 3]. There is nothing in the record evidence, other than Plaintiff's conclusory allegation here, to show that Defendant Keaton knew that Plaintiff was going to be transferred to SFRC.

Furthermore, Petitioner also claims that Defendant Keaton had access to a computer printout showing that Plaintiff's transfer back to SFRC was approved on September 29, 2016, prior to the date on which Keaton received Plaintiff's first grievance. [ECF 258, pp. 4, 44]. Closer review of the record reveals, however, that the printout merely states that on September 29, 2016, "SR transfer" was recommended and approved. [*Id.*, p. 44]. There is nothing to show that when this transfer was to occur or whether this transfer was back to SFRC specifically. Thus, Petitioner's argument as to this point is speculative and is contradicted by his own records provided in his response. [*Id.*]. Even if Defendant Keaton had seen this

---

[2] Plaintiff alleges in his response that Keaton had "subjective knowledge" of the danger to him because his initial grievances were attached to his appeals, and that those grievances, in detail, informed Keaton of the threat of violence. [ECF 258, p. 4]. Specifically, he claims that he expressly discussed the threat to be returned to SFRC in two institution-level grievances, which he labels as exhibits H and I [ECF 258, p. 6]. However, there is nothing in the record evidence to suggest that Plaintiff appealed the denial of those grievances to Defendant Keaton specifically. [ECF 258, pp. 26-28].

Moreover, his claim that there is a possibility that other appeals were sent to Keaton and are "still missing" [ECF 258, pp. 6-7], without more, is conclusory and speculative. There is no record evidence to support such a claim. Nevertheless, as will be discussed below, even when assuming that Keaton had subjective knowledge of the SFRC threat towards Plaintiff, her actions were not objectively unreasonable, and were therefore, not unconstitutional.

record during her review of Plaintiff's grievance appeal, it does not suggest that she knew he was scheduled to be transferred back to SFRC, thus indicating that she did not have subjective knowledge of a substantial risk of serious harm to Plaintiff.

However, even when assuming, *arguendo*, that Plaintiff has shown that Defendant Keaton had subjective knowledge that he faced a substantial risk of serious harm, the record evidence shows that no reasonable juror could conclude that Keaton disregarded the substantial risk of serious harm to Plaintiff by failing to respond to it in an objectively unreasonable manner. Rather, the evidence shows that Keaton's job was to review appeals, and that she did not have any say in whether the Plaintiff would be returned to SFRC. When she received Plaintiff's first appeal, she noted that the matter had already been reported to the Inspector General in compliance with FDOC policy. [ECF 241-7, ¶5]. Specifically, she noted that the Inspector General would investigate the allegations, and possibly conduct a personal interview with Plaintiff. [ECF 241-5, p. 4]. Keaton indicated that upon completion of the review, the "appropriate administrators" would review the information "for final determination and handling." [*Id*.].

With the second appeal, Keaton stated that the issue was properly handled at the institutional level. [ECF 241-5, p. 9]. When looking at the grievance at the institutional level, it appears that it was determined by classification that Plaintiff

would remain in administrative confinement at South Bay.[3] [ECF 241-6, p. 9]. Given the scope of her job duties, and the fact that the Inspector General's investigation into the nature and credibility of Plaintiff's sexual assault allegations was ongoing, her actions were not objectively unreasonable. Even Plaintiff himself acknowledges in his deposition that state classification, and not the Bureau of Administrative Appeals, is the entity responsible for determining when and where an inmate is transferred. [ECF 241-1, p. 167].

Nevertheless, despite Plaintiff's acknowledgment that his classification was not within Defendant Keaton's duties, he still speculatively alleges that Keaton could have done something more. Specifically, he claims that she could have reported the matter to the Inspector General's office [ECF 258, p. 3], or called law enforcement [*Id.* p. 5]. However, given Keaton's position as an appeals officer, her duty was to process inmate appeals. Thus, her actions in denying Plaintiff's appeals on the basis that his allegations of sexual assault was already being investigated, was reasonable. The law is clear that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably

---

[3] The institutional grievance number, 1609-405-081, appears at the bottom of Plaintiff's administrative appeal. [ECF 241-6, p. 7]. Notably, the institution level grievance, what Defendant Keaton was reviewing, had to do with Plaintiff's belief that he was being "punished" in confinement at South Bay for reporting the assault, and did not directly involve the threats allegedly made towards him. [*Id.*, p. 8].

to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

While it is true that Defendant Keaton *could* have done more, it was not deliberate indifference for her to fail to do so. As such, Keaton's failure to take additional affirmative action regarding Plaintiff's grievance appeal can only demonstrate negligence at worst – not deliberate indifference. *See Bishop v. Bolar*, No. 15-0252-WS-C, 2016 WL 2962896, *9 (S.D. Ala. Apr. 6, 2016) (citing *Brooks v. Powell*, 800 F.3d 1295, 1299 (11th Cir. 2015)); *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (the mere negligent failure to protect an inmate from an attack does not justify liability under § 1983). Negligence, however, is insufficient to impose liability under § 1983. *See Farmer*, 511 U.S. at 838.

Moreover, to the extent that Plaintiff argues that Keaton failed in her duties as an appeals officer under the Florida Administrative Code by failing to review the Inspector General's report when determining how to proceed with his grievance appeal [ECF 258, pp.1-2], such an argument is unpersuasive. "[A] violation of [] prison regulations in itself is not a constitutional violation." *See Edward v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000). Rather, Plaintiff must show that Defendant Keaton's actions (or inaction) was done with "conscious or callous indifference to a

prisoner's rights." *Williams v. Bennett*, 689 F.2d at 1380. Even when taking Plaintiff's allegations as true, he fails to establish this component of the inquiry.[4] [5]

Thus, when viewing the record evidence in the light most favorable to Plaintiff, there is insufficient evidence from which a reasonable jury could conclude that Keaton was deliberately indifferent to Plaintiff's constitutional right to safety. The evidence shows that Keaton was not involved in the decision to transfer Plaintiff back to SFRC and has no authority to determine classification or housing matters. Accordingly, summary judgment for Keaton on Plaintiff's claim of deliberate indifference claim is warranted.

B. Qualified Immunity

Given the foregoing, even when looking at the facts in the light most favorable to the nonmoving party, Defendant Keaton was not deliberately indifferent to Plaintiff. Although the Court is sympathetic to Plaintiff's claims and injury, as alleged; unfortunately, nothing in the record creates a genuine issue of fact as to whether Defendant Keaton violated Plaintiff's constitutional rights. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013). Having found that the Plaintiff

---

[4] Furthermore, as asserted by Defendant Keaton in her reply, the Inspector General's full report regarding the alleged sexual assault was unavailable for review until May 2019 because until then, the investigation was ongoing. [ECF 235].

[5] Moreover, to the extent that Plaintiff argues that the Defendant failed to file a statement of material facts, in violation of the Local Rules, such a claim is without merit. Defendant Keaton's motion expressly includes a section called "Statement of Undisputed Facts" in compliance with S.D. Fla. Local Rule 56.1(a).

fails to establish a constitutional violation, this Court need not address whether the Defendant is entitled to qualified immunity. The Defendant's motion for summary judgment should be granted.

### VI. Conclusion

It is, therefore, recommended that Defendant's motion for summary judgment [ECF 241] be **GRANTED.**

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar Plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida, this 8th day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    Bobby Minnis
        73130-004
        Coleman Low
        Federal Correctional Institution
        Inmate Mail/Parcels
        Post Office Box 1031
        Coleman, FL 33521
        PRO SE

        Maria Guitian Barker
        Office of the Attorney General
        General Civil Division
        State of Florida
        110 Southeast 6th Street
        10th Floor
        Fort Lauderdale, FL 33301
        954-712-4600
        Fax: 954-527-3702
        Email: Maria.GuitianBarker@myfloridalegal.com