UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-20575-CV-GAYLES
MAGISTRATE JUDGE REID

BOBBY MINNIS,

              Plaintiff,

v.

GEO CORPORATION, et al.,

              Defendants.
_____/

## **REPORT OF MAGISTRATE JUDGE**
### **[ECF 232]**

Plaintiff Bobby Minnis filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, against multiple defendants for damages concerning events that allegedly occurred while he was incarcerated by the Florida Department of Corrections.

This case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b), S.D. Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2019-2.

Defendants[1] Heller, Amede, And Bennett have filed a consolidated motion for summary judgment, which is presently before the Court. [ECF 232]. In support of their motion, the Medical Defendants have filed a statement of material facts [ECF 231], and exhibits in support thereof [ECF 230]. The Court has also reviewed Plaintiff's response to the motion [ECF 256], his statement of disputed facts in opposition to the motion [ECF 254], and the Medical Defendants' reply to the Plaintiff's response [ECF 261]. As discussed below, the motion should be DENIED.[2]

## I. Facts Alleged in the Complaint

Plaintiff makes the following allegations to support his claim of deliberate indifference to medical needs against the Medical Defendants. The Court takes these allegations from his second amended complaint, [17-CV-80170: ECF 21-1], which

---

[1] In this report, the undersigned refers to these Defendants as the "Medical Defendants."

[2] This case was initially filed under 17-CV-80170-MARRA, and was later consolidated with the instant action (17-CV-20575-GAYLES). Prior to consolidation, the Medical Defendants filed a motion for summary judgment identical to the one at issue in this report. [17-CV-80170: ECF 117]. This Court then issued a report recommending that summary judgment be granted. [*Id*.: ECF 152]. However, before the District Judge ruled on the motion, the cases were consolidated, and all pending motions were terminated. [*Id*.: ECF 161].

Despite the Court's previous report recommending that summary judgment be granted, upon further review of the record, and further developments in the case law (particularly, *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019)), the Court issues the instant report recommending denying summary judgment because, as will be discussed in more detail below, the Plaintiff's sworn allegations cannot be discredited at the summary judgment stage.

he signed under the penalty of perjury. [*Id.* at p. 13].[3] Thus, the Court may rely on his allegations when considering the Medical Defendants' motion for summary judgment. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991) (citation omitted); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted).

On August 28, 2016, SFRC officers attacked Plaintiff, which included: brutally beating and torturing him; breaking his bones; dousing him with bleach; ramming a broomstick up his rectum and into his internal organs; and attempting to pull off his genitals with a rope. [17-CV-80170: ECF 21-1, p. 4].

On August 29, 2016, upon transfer to South Bay, Plaintiff had to wait to see the intake nurse despite his battered appearance. [*Id.*]. Upon learning the source of his injuries, the intake nurse ignored his claims of broken bones and internal bleeding, as well as his request for emergency medical attention. [*Id.*] The intake nurse said: "If the officers did that to you, you deserve it, and I am not going to help you sue them." [*Id.*].

Plaintiff then "made his way over to Nurse Amede." [*Id.*]. However, despite seeing his battered appearance, Nurse Amede snarled, "Get away from me." [*Id.*].

---

[3] All page citations for docket entries refer to the page-stamp number located at the top, right-hand corner of the page.

Plaintiff then approached Dr. Heller and declared a medical emergency. [*Id.*]. Dr. Heller told him to sit down and that he would call Plaintiff once the intake nurse gave Dr. Heller Plaintiff's medical file. [*Id.*]. After some time, Dr. Heller begrudgingly opened the file and learned the source of Plaintiff's injuries. [*Id.*]. Yet Dr. Heller refused to examine Plaintiff and simply prescribed ibuprofen. [*Id.* pp. 4-5]. Plaintiff responded that he had broken bones and internal bleeding. [*Id.* p. 5]. This annoyed Dr. Heller, who told Plaintiff that broken bones are not a medical emergency. [*Id.*]. Still, Dr. Heller put in a sick-call request for someone to see Plaintiff. [*Id.*]. Whereas medical emergencies are free of charge and immediate, sick calls cost $5 and typically are responded to in three to four days. [*Id.*].

Next, Plaintiff was put in confinement. [*Id.*]. Even though he could not lift himself up unaided, Plaintiff managed to put in a sick-call request. [*Id.*]. The nurse told him that doctors' visits were on Wednesdays, which meant that he would have to wait ten days to see a doctor. [*Id.*].

Meanwhile, Plaintiff's testicles swelled up with blood to the size of a soccer ball, which became a life-threatening condition. [*Id.*]. Therefore, Plaintiff had to sharpen an ink pen and use it to "bore a hole in the bottom of his expanded scrotum to let all the festering blood and . . . fluids out, which was . . . excruciating." [*Id.*]. When Wednesday arrived, however, a doctor did not see Plaintiff, though he was still charged the $5 fee. [*Id.*].

4

Plaintiff then put in another sick-call request. [*Id.*]. "Days later," Plaintiff "was called out and made to stand in line for almost eight hours as every other seemingly healthy inmate . . . was seen first[.]" [*Id.*]. The nurse who finally saw him determined that, because he complained of "broken ribs and a flow of blood," he should have been examined the moment he arrived. [*Id.*]. This nurse then left to see a doctor and told Plaintiff that he would be seen no later than the next morning. [*Id.* pp. 5-6]. However, "days later he still had not seen a doctor," and he "was still charged another $5 co-pay." [*Id.*].

"In response, [] plaintiff submitted a third written request for a medical emergency [sic] and sent in a grievance complaining about being charged twice for a doctor visit that had yet to happen, and which should have been free in the first place." [*Id.* p. 6]. "He was then charged yet another $5 co-pay and still did not see a doctor." [*Id.*].

Nothing happened for 2.5 weeks until Plaintiff alerted the inspector general. [*Id.*]. In response, Dr. Heller "begrudgingly" saw Plaintiff. [*Id.* p. 6]. Dr. Heller determined that Plaintiff did not have internal injuries because his sphincter was not "ripped apart, as if the jaws of life [had been] used on it[.]" [*Id.*]. Further, Dr. Heller determined that there was no evidence of broken bones. [*Id.*]. Dr. Heller did order that X-rays be taken, but only because the inspector general insisted on it. [*Id.*]. Dr.

Heller also prescribed Plaintiff "more painkillers and some cheap muscle rub before ordering him to leave." [*Id.*].

"Days later," X-rays were taken. [*Id.*]. After that, Plaintiff grieved the fact that he had been thrice charged for doctors' visits that never took place. [*Id.*]. In response, ARNP Amede went to see him in confinement. [*Id.*]. "Later she visited him again to reveal the findings of his X-ray[s]." [*Id.*]. "In . . . one spot he had two healing badly broken ribs." [*Id.*].

## II. The Medical Defendants' Version of the Facts

On August 29, 2016, Plaintiff was transported from SFRC to South Bay. Upon arrival, Nurse Bennett examined him. [ECF 230-3 at p. 2; ECF 230-4 at pp. 26-27, 39, 46]. Nurse Bennett "is a licensed practical nurse familiar with the protocol and procedure for completing the health information transfer and arrival summary, the tuberculosis questionnaire, work assignment clearance, and the health services orientation and health education for inmates at South Bay . . . ." [ECF 231, p. 2] (citation omitted). Nurse Bennett educated Plaintiff about, *inter alia*, communicable diseases (including sexually transmitted diseases) and how to obtain medication and/or treatment. [ECF 230-3, p. 2; ECF 230-4, p. 46].

Plaintiff reported post-altercation rib pain and had bruising on the right side of his face. [ECF 230-4, p. 27]. Plaintiff also indicated that his energy level was not normal, which he attributed to dust mites. [*Id.* p. 39].

Nurse Bennett documented that Plaintiff was: (1) oriented to person, place, and time; (2) cooperative; and (3) not agitated, anxious, or bizarre. [ECF 230-3, p. 2; ECF 230-4, p. 26]. Plaintiff did not complain of having been assaulted, sexually or otherwise, by SFRC officers before arriving at South Bay. [ECF 230-3, p. 3]. Furthermore, Plaintiff did not complain about his neck, knee, finger, scrotum, rectum, bleeding, or chemical burns. [ECF 230-3, p. 3]. Moreover, Plaintiff denied chest pain or shortness of breath and was not coughing up blood. [ECF 230-4, p. 39].

Nurse Bennett documented that Plaintiff required a pass for no prolonged standing. [ECF 230-3, p. 2; ECF 230-4, p. 27]. Nurse Bennett further documented that Plaintiff was not cleared for kitchen or barbershop duty. [ECF 230-4, p. 44]. Plaintiff was then referred to the clinician for a routine evaluation. *See* [ECF 230-3, p. 2; ECF 230-4, p. 27].

Dr. Heller conducted the routine evaluation on the same day. [ECF 230-1, p. 3]. Dr. Heller then was, and still is, the Medical Director at South Bay. [*Id.* p. 1]. L. Jones, Nursing Supervisor, also saw Plaintiff. [ECF 230-4, p. 24].

Plaintiff complained of joint pain and chronic back pain. [*Id.*]. For his pain complaints, Dr. Heller prescribed: (1) 800 mg of ibuprofen twice per day for 90 days; (2) a low bunk pass; (3) restricted activity and no prolonged standing; and (4) Triamcinolone ("TAC") cream. [ECF 230-1, p. 3; ECF 230-4, pp. 27, 30, 34]. In Dr. Heller's professional judgment, these were reasonably prudent and standard orders

to treat Plaintiff's complaints. [ECF 230-1, p. 3]. Plaintiff was also referred to Mental Health Services for orientation. [*Id.*; ECF 230-4, pp. 27, 46].

Plaintiff did not tell Dr. Heller that SFRC officers had assaulted him before he arrived at South Bay. [ECF 230-1, pp. 2-3]. Nor did he complain about his neck, knee, finger, scrotum, rectum, bleeding, or chemical burns. [*Id.* p. 2].

Later, on August 29, 2016, Plaintiff submitted a sick-call request in which he stated that he needed an X-ray because he had one or more broken ribs. [ECF 230-4, p. 22]. He stated that this problem started "two days ago," when he "was jumped." [*Id.*].

In response, LPN Morris saw Plaintiff on September 1, 2016. [ECF 230-1, p. 3; ECF 230-4, pp. 20-21]. Plaintiff complained of pain to his left and right sides. [ECF 230-4, p. 20]. LPN Morris completed the fracture/dislocation/sprain protocol form, documenting that a "fight/brawl" caused the injury. [*Id.* pp. 20-21]. LPN Morris did not find any swelling, deformity, or bleeding. [*Id.* p. 20]. LPN Morris documented that Plaintiff was on ibuprofen 800 mg and TAC 0.1% cream and referred him to the clinician. [*Id.*].

On September 8, 2016, Plaintiff submitted a sick-call request in which he stated that he was scheduled to see a doctor in confinement on September 7, 2016, but that the doctor never came to see him. [ECF 230-4, p. 18]. Plaintiff does not identify the doctor in his sick-call request. [*Id.*]. Further, Plaintiff stated that he "told

the nurse and the doctor when [he] arrived on . . . 8-29-16 that [he] had a broken bone and needed X-rays[.]" [*Id.*]. Additionally, Plaintiff stated that he had had a broken bone for almost two weeks and, therefore, urged X-rays and treatment. [*Id.*]. For his part, Dr. Heller declares that he did not refuse to see Plaintiff on September 7, 2016. [ECF 230-1, p. 3].

On September 13, 2016, LPN Smith saw Plaintiff. [ECF 230-1, p. 3; ECF 230-4, pp. 16-17]. Plaintiff complained of "right back pain level 6" and "left side back pain level 8." [ECF 230-4, p. 16]. Likewise, he complained of bruising and upper left chest discomfort. [*Id.*]. Further, Plaintiff reported that his pain had begun two weeks ago and resulted from having been kicked approximately 100 times by boots. [*Id.*]. Additionally, Plaintiff did not complain of urinary pain or blood in his urine. [*Id.*].

LPN Smith found that Plaintiff had "[s]evere back pain." [*Id.*]. LPN Smith prescribed: (1) 2 tablets of ibuprofen 200 mg to be taken 3-4 times per day; and (2) a pass for no activity for 72 hours. [ECF 230-1, p. 4; ECF 230-4, p. 17]. Furthermore, for the first 72 hours, LPN Smith instructed Plaintiff to apply a covered ice pack or cold compress to the painful area 3-4 times a day. [*Id.*]. After 72 hours, LPN Smith instructed Plaintiff to apply a warm, moist towel to the painful area 3-4 times a day. [ECF 230-4, p. 17]. Likewise, LPN Smith instructed Plaintiff to apply a thin layer of analgesic balm to the affected area 3-4 times per day for pain relief. [*Id.*]. Finally,

LPN Smith instructed Plaintiff to return to medical if his symptoms returned or worsened, or if any new symptoms developed. [*Id.*].

On September 14, 2016, LPN Mitchell saw Plaintiff. [ECF 230-1, p. 4; ECF 230-4, pp. 11-14]. LPN Mitchell completed the Fracture/Dislocation/Sprain and Alleged Sexual Battery protocol forms. [*Id.*]. Plaintiff reported that, on August 28, 2016, a group of officers at SFRC kicked, beat, and sodomized him with a broom handle. [ECF 230-1, p. 4; ECF 230-4, p. 13]. Further, Plaintiff reported a medical history of, *inter alia*, joint pain and chronic back pain. [ECF 230-4, p. 13]. Plaintiff's chief complaints were anal bleeding and related pain, as well as rib pain. [*Id.*]. Plaintiff stated that, although some pain had subsided, he was still having anal pain and bleeding. [ECF 230-1, p. 4; ECF 230-4, p. 13].

Upon visual examination of the anus, LPN Mitchell did not note any injuries, only redness. [*Id.*]. LPN Mitchell initiated the Prison Rape Elimination Act protocol. [ECF 230-1, p. 4; ECF 230-4, p. 15]. Finally, LPN Mitchell notified Dr. Heller. [ECF 230-1, p. 4].

Dr. Heller examined Plaintiff minutes after being notified. [ECF 230-1, pp. 4-5; ECF 230-4, p. 15]. Plaintiff reported that his ribs had been kicked on August 28, 2016. [ECF 230-4, p. 15]. Dr. Heller noted that Plaintiff was unable to work and had pain on deep inspiration, tenderness over the left lower ribs, and a hematoma above the left lateral pelvis. [ECF 230-1, p. 5; ECF 230-4, p. 15]. Plaintiff reported that the

10

ibuprofen Dr. Heller had prescribed him, along with muscle rub and hot showers, had helped some, at least with the rib pain. [*Id.*].

Plaintiff also reported that a broomstick handle had been shoved up his rectum. [ECF 230-1, p. 5; ECF 230-4, p. 15]. Dr. Heller "examined his rectum and found no tear or blood to indicate a physical or sexual assault." [*Id.*].

Based on his examination, Dr. Heller prescribed ibuprofen 800 mg twice a day for 28 days. [*Id.*]. Further, Dr. Heller prescribed muscle rub balm and right and left rib X-rays. [*Id.*]. Finally, Dr. Heller issued a pass for: (1) bed rest from September 14-17, 2016; (2) restricted activity from September 14, 2016 to October 5, 2016; and (3) no work for three weeks. [ECF 230-1, p. 5; ECF 230-4, p. 34].

On September 15, 2016, Nurse Warren completed a pre-confinement health evaluation form. [ECF 230-4, pp. 8, 10]. The form does not indicate that Plaintiff complained of any medical problems. [*Id.* p. 8].

X-rays of Plaintiff's right and left ribs were taken on September 21, 2016. [ECF 230-4, pp. 35-36]. The X-ray of his right ribs showed "[n]ondisplaced anterior left sixth and seventh rib fractures." [*Id.* p. 35]. The X-ray of his left ribs came back negative. [*Id.* p. 36]. Furthermore, on the same date, RN Chunnu saw Plaintiff for complaints of back pain. [ECF 230-4, p. 6]. RN Chunnu noted that Dr. Heller saw him on September 14, 2016 for the same issue. [*Id.*].

11

On September 28, 2016, ARNP Amede saw Plaintiff to follow up on his X-rays and complaints of back pain. [ECF 230-2, p. 2; ECF 230-4, p. 36]. ARNP Amede ordered Naproxen 500 mg twice a day for pain. [ECF 230-2, p. 2; ECF 230-4 at pp. 4, 28]. Moreover, ARNP Amede educated Plaintiff regarding his condition, diet, exercise, and medical access. [ECF 230-2, p. 2; ECF 230-4, p. 4].

Thereafter, Plaintiff was on pain medication, muscle rub, and restricted activity status until his transfer from South Bay in November 2016. [ECF 230-1, pp. 5-6]. Dr. Heller declares that this "treatment was medically reasonable and appropriate for his reported complaints." [*Id.* p. 6].

Plaintiff did not submit a sick-call request between September 28, 2016 and his transfer to SFRC in November 2016. [ECF 231, p. 7] (citation omitted). After his transfer to SFRC, Dr. Pino saw Plaintiff. [ECF 230-1, p. 6; ECF 230-4, p. 2]. Dr. Pino renewed the prescription for ibuprofen and TAC cream. [*Id.*].

### III. Plaintiff's Response to The Medical Defendants' Motion for Summary Judgment

Plaintiff filed the following documents in response to the Medical Defendants' motion for summary judgment: (1) Plaintiff's declaration in opposition [ECF 256, pp. 4-12]; (2) affidavit of Bobby Minnis [ECF 256, pp. 40-41]; (3) declaration of Ronald Lee Haynes (Plaintiff's cellmate) [ECF 256, p. 42]; (4) Plaintiff's statement of disputed facts [ECF 254]; and (5) Plaintiff's memorandum

of law in support of his declaration in opposition [ECF 256, pp. 13-16]. All of these documents function as one hybrid response. From the best the undersigned can tell, Plaintiff makes the following arguments in response to the Medical Defendants' motion for summary judgment.[4]

- When Plaintiff arrived at South Bay, he informed Nurse Bennett of terrible pain in his ribs, but as soon as he revealed to her that officers had assaulted him, she immediately ceased documenting his injuries and insisted that she would do nothing to treat him. [ECF 256, p. 2].

-Plaintiff then pleaded with Defendant Amede for medical assistance, but she refused. [*Id.*]. Defendant Heller also informed him that neither he nor his staff would document, treat, or report Plaintiff's injuries. [*Id.*].

-Even though Defendant Heller renewed Plaintiff's passes for a bottom bunk and no prolonged standing, those passes have been renewed each time Plaintiff has arrived at a new camp based on his history of spasms in his right leg. [*Id.*].

-Had the Medical Defendants acknowledged Plaintiff's injuries, they would have been reported to law enforcement and they would have been obligated to send him to a hospital. [*Id.*]. Instead, he was transported to an isolation cell, and Defendant

---

[4] Plaintiff signed his declaration in opposition under the penalty of perjury, and parts of the hybrid response are notarized. *See* [ECF 256 pp. 12, 41, 42]. Therefore, the Court may rely on the allegations in the hybrid response when ruling on the instant motion for summary judgment. *See Jones*, 393 F.3d at 923.

Heller advised him that he still insisted on received medical attention, he could fill out a non-emergency sick call request and pay the required charge. [*Id*. p. 3].

-A few hours later, Plaintiff demanded medical attention by filling out a sick call request. [*Id*.]. He received no response. [*Id*.].

-The next day, Plaintiff was moved to a cell with inmate Ronald Haynes. [*Id*.]. Haynes states in a sworn declaration that, on August 30-31, 2016, Plaintiff "was placed in [Haynes's] cell at South Bay with horrific injuries." [*Id*.]. Haynes further states:

> Because [Plaintiff's] colon kept filling up with blood he had to sit on the toilet several times per day to poop out a bowl full of blood. [Plaintiff's] scrotum was also filling up with blood, and because [plaintiff] could not even get up out of bed or bring up or down his own pants unaided, I was able to see that after just two days . . . [Plaintiff's] scrotum was already as big as a softball. [Plaintiff] complained of broken bones and was covered in grotesque bruises.

*Id.*

-On September 3, 2016, Plaintiff reported the attack and sexual assault to the TIPS hotline. [*Id*. pp. 4, 34].

-Nine days later, on September 8, 2016, Plaintiff submitted another non-emergency sick call request, reporting that he needed x-rays for his broken ribs and treatment. [*Id*. p. 3]. A non-defendant nurse referred Plaintiff to Defendant Heller for treatment, but he again remained indifferent. [*Id*.].

-Three days later, on September 11, 2016, Plaintiff submitted a grievance once again reporting his injuries, including a broken bone and being sodomized with a broom. [*Id*. p. 4].

-Inspector General Christopher Castner insisted that Defendant Heller examine Plaintiff in front of him. [*Id*.]. By this time, Plaintiff's blood had dried up, but he was still covering in bruises. [*Id*.]. Defendant Heller even noted that Plaintiff had a huge hematoma on his chest, but refused to check on his internal injuries. [*Id.*].

-Defendant Heller glanced at Plaintiff's anal sphincter, and noted redness, but concluded that since his sphincter was not ripped open, there could be no internal injury to his bladder. [*Id.*].

-Although Heller insisted that Plaintiff did not have broken ribs, Castner pressured Heller into ordering an X-ray, and then recorded that Plaintiff was merely suffering from an aching back. [*Id*.].

-The X-ray confirmed that Plaintiff had two fractured ribs. [*Id*. pp. 4, 33]. Even though the X-ray confirmed his story, Defendant Heller and Amede did nothing about it for an entire week before he was finally prescribed the painkiller Naproxen for sixty days. [*Id*. pp. 4-5].

-Plaintiff only received the Naproxen for three days. [*Id*. p. 5].

-Because Plaintiff did not receive necessary medical care, his ruptured scrotum filled with blood, and Plaintiff had to bore a hole through his own flesh to

15

drain greenish fluid from his body. [*Id*.]. This, combined with his inability to move due to his shattered ribs and other injuries, left him in excruciating pain. [*Id*.].

-Even a year later, records showed that Plaintiff's right testicle was still enlarged, and that both testicles are severely damaged. [*Id*.].

-Since the incident, Plaintiff has been diagnosed with P.T.S.D., and the Medical Defendants' failure to report Plaintiff's assault led directly to him being sent back to SFRC, to be terrorized by the same officers who assaulted him. [*Id.*].

-As a result of his injuries, Plaintiff still suffers from multiple injuries to this day that went unreported or untreated. [*Id*. p. 7].

## IV. Standard of Review

Under Rule 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a

district court "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]"*Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)), the moving party necessarily carries the burden. *Great Am. All. Ins. Co.*, 847 F.3d at 1331 (relying upon *Celotex*, 477 U.S. at 323). In meeting that burden, nonmoving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible

at trial. *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex*, 477 U.S. at 324).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co.*, 847 F.3d at 1331 (relying upon *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am. All. Ins. Co.*, 847 F.3d at 1331 (relying upon *Anderson*, 477 U.S. at 248). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). In sum, where no reasonable juror could find in the non-moving party's favor, summary judgment is appropriate. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir.1997).

In the summary judgment context, courts must still construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). Notwithstanding, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c)" courts may consider the fact undisputed for purposes of the motion and grant summary judgment if the facts in the record—including those considered undisputed— illustrate that the movant is entitled to judgment in its favor. Fed. R. Civ. P. 56(e)(2).

Moreover, an inmate's statements in a verified complaint or a sworn response to a motion for summary judgment is appropriately treated as "testimony" when ruling on a summary judgment motion. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") and *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment)).

## V. Analysis

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted). "First, the plaintiff must prove an objectively serious medical need." *Id.* (citation omitted). "Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need." *Id.* (citation omitted).

"A serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation omitted).

19

"In either case, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (alteration in original) (citation omitted).

Here, while his second amended complaint and hybrid response are not models of clarity, Plaintiff appears to allege that he has several objectively serious medical needs, including broken ribs, swollen testicles and a damaged, bleeding rectum. *See, e.g.*, [ECF 21-1, p. 9; ECF 256].

A reasonable juror could conclude that Plaintiff's injuries are an objectively serious medical need. It is undisputed that Plaintiff had nondisplaced anterior left sixth and seventh right rib fractures. Furthermore, Plaintiff complained about rib pain, side pain, and back pain. Likewise, Dr. Heller and LPN Smith, respectively, found Plaintiff to have pain on deep inspiration and severe back pain. Additionally, Plaintiff was prescribed ibuprofen throughout his stay at South Bay, and Naproxen once diagnosed with broken ribs. *See Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) (per curiam) (broken bones are serious medical needs; severe pain can also constitute a serious medical need (citations omitted)).

Regarding Plaintiff's sexual assault related injuries, a reasonable juror could also conclude that Plaintiff's enlarged, stretched testicles and damaged rectum constituted an objectively serious medical need. Although the medical reports do not reflect that Plaintiff reported the assault or resulting injuries until more than a week after the incident, Plaintiff's own sworn assertions establish that he reported these

20

injuries upon his arrival at SFRC and that the Medical Defendants refused to document and treat these injuries. Plaintiff and his cellmate, Ronald Haynes, state that he was bleeding and in excruciating pain, so much so that Plaintiff had to bore a hole in his scrotum to drain fluid from his swollen testicles. Haynes also asserts that two days after the incident, on August 30, 2016, Plaintiff's colon kept filling up with blood such that he had to sit on the toilet several times per day to eliminate the blood into the toilet.

Moreover, although Defendant Heller determined that Plaintiff had slight redness on his rectum nearly two weeks after the incident, this fact fails to contradict Plaintiff's claim that he had been sexually assaulted and in pain at the time of the examination. It is possible that Plaintiff's rectal bleeding from the sexual assault had resolved itself by the time of Defendant Heller's examination. This does not, however, negate Plaintiff's sworn assertion that he informed the Defendants of his injuries at the time he arrived at SFRC and that they failed to treat them in an attempt to cover up the assault to protect the suspected officers. Whether Plaintiff's injuries could have resolved themselves before the actual examination was completed is an issue of fact which must be put before the jury.

Plaintiff's sworn assertions, although self-serving, are testimony that directly contradicts the Defendants' summary judgment evidence. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Recently, in *Sears*, the Eleventh Circuit reversed

21

the District Court order granting summary judgment in an excessive force case where the District Court failed to properly apply the appropriate standard under Fed. R. Civ. P. 56. *Id.* at 1206. The Eleventh Circuit found that the District Court had improperly relied exclusively on prison disciplinary reports, medical records, and other "objective" evidence, finding that Plaintiff's version of the events was "not correct" because it was refuted by this record evidence. *Id.* Instead, the Eleventh Circuit held that "[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony," and that the prisoner's "verified complaint, sworn response, and sworn affidavit" precluded summary judgment. *Id.* (internal citations omitted). Thus, even if the prisoner's sworn statements "turn out to be exaggerations or false," they are [still] enough to raise a genuine issue of material fact that should go before the jury. *Id.* at 1209.

Here, the Court cannot discredit Plaintiff's sworn allegations in the instant motion for summary judgment. It is the province of the trier of fact to weigh the credibility of the allegations made in this case.

Moreover, to the extent that the Medical Defendants argue that their evidence shows that Plaintiff did not report the sexual assault or related injuries until nearly two weeks after the incident, Plaintiff swears that this is false. In fact, Plaintiff alleges that he did report his assault and injuries to the TIPS hotline on September 3, 2019. However, the fact that Plaintiff's medical grievances show that he failed to

allege that the Medical Defendants did not treat his sexual assault-related injuries, will also be weighed by a jury. Plaintiff's allegations must be taken as true at this stage of the proceedings and those allegations establish that he told the Medical Defendants about the assault.

Having established that his injuries constituted a serious medical need in the light most favorable to Plaintiff, the Court must next determine whether a reasonable jury could conclude that the Medical Defendants were deliberately indifferent to Plaintiff's condition. "To establish . . . deliberate indifference to the serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351 (citation omitted). "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state  a  valid claim of medical mistreatment  under  the Eighth Amendment." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of [deliberate indifference]." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted); *see also Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (per curiam) ("A difference in medical opinion

23

does not constitute deliberate indifference so long as the treatment provided is minimally adequate." (citation omitted)).

Here, when looking at the evidence in the light most favorable to the Plaintiff, a reasonable juror could conclude that the Medical Defendants disregarded Plaintiff's rib injuries. When he arrived at South Bay, Plaintiff complained to Nurse Bennett about post-altercation rib pain and back pain. Nurse Bennett documented that he needed a pass for no prolonged standing and was not cleared for certain types of work. She then referred him to Dr. Heller, who examined Plaintiff the same day. Dr. Heller prescribed: (1) 800 mg ibuprofen twice per day for 90 days; (2) a low bunk pass; (3) restricted activity and no prolonged standing; and (4) TAC cream. In his professional judgment, these were reasonably prudent and standard orders to treat Plaintiff's complaints. Plaintiff swears, however, that these orders were not given to treat his rib injuries, but were instead renewals of medical passes that had been renewed each time Plaintiff arrived at a new prison since he became an FDOC prisoner. [ECF 256, p. 2].

Moreover, while it is generally true, that "the question or whether an X-ray…is indicated is a classic example of a matter for medical judgment." *see Estelle*, 429 U.S. at 107, Plaintiff asserts that no X-ray was done, not because it was not clinically indicated, but because the Defendants failed to document the true nature and severity of his injuries in an attempt to cover up the brutal assault. This does not

24

display a mere difference in medical opinion between Plaintiff and the Medical Defendants as to the proper course of treatment. *Harris*, 941 F.2d at 1505. Instead, in the light most favorable to the Plaintiff, it displays a deliberate and intentional indifference to his serious medical need.

Furthermore, when looking at the evidence in the light most favorable to the Plaintiff, a reasonable juror could also conclude that the Medical Defendants disregarded Plaintiff's sexual assault-related injuries. Specifically, Plaintiff swears that he informed the Medical Defendants of the sexual assault by the officers at SFRC, and that they expressly refused to document and treat his injuries. [ECF 256, p. 2]. These horrific injuries included severe rectal bleeding and ruptured scrotum. [*Id.* p. 3]. An ultrasound later showed that Plaintiff has an enlarged right testicle. [*Id.* p. 5]. Whether this injury resulted from the attack at SFRC, and whether it is related to Plaintiff's initial claims of sexual assault and resulting grotesque injuries, is a genuine issue of material fact that cannot be resolved in the instant motion for summary judgment.

Plaintiff has asserted in his response that he has ongoing physical complaints as a result of the attack and the Medical Defendants' failure to treat his sexual assault-related injuries. [ECF 256, p. 7]. In this motion for summary judgment, the Court does not, and cannot, judge the credibility of these allegations. Although Plaintiff has little, other than his own sworn allegations and the sworn statement of

his cellmate to support his claims, he swears that the medical records do not accurately reflect his injuries because the Medical Defendants failed to record them in order to protect the SFRC officers. These allegations must be taken as true at this stage of the proceedings. *See Sears*, 922 F.3d at 1206. Accordingly, when taking the evidence in the light most favorable to the Plaintiff, his deliberate indifference claim against the Medical Defendants survives the instant motion for summary judgment.

## VI. Conclusion

It is, therefore, recommended that Defendant's motion for summary judgment [ECF 232] be **DENIED.**

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar Plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida, this 8th day of September, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Bobby Minnis
73130-004
Coleman Low
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1031
Coleman, FL 33521
PRO SE

Jeffery Rodman Lawley
Billing, Cochran, Lyles, Mauro & Ramsey, PA
515 E Las Olas Boulevard
Suite 600 Suntrust Bank
Fort Lauderdale, FL 33301
954-764-7150
Fax: 954-764-7279
Email: jrl@bclmr.com

Brett M. Waronicki
Wiederhold, Kummerlen & Waronicki, PA
340 Columbia Drive, Suite 111
West Palm Beach, FL 33409
561-615-6775
Fax: 561-615-7225
Email: bwaronicki@wmrfla.com